[No. A116502. First Dist., Div. Two. Sept. 26, 2007.]

BRIAN MCGILL ISAAC, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Miguel A. Neri, Fiel D. Tigno and Robert Andrew Harkness, Deputy Attorneys General, for Defendant and Appellant.

Mitchell, Hedin, Breiner, Ehlenbach & Burglin and Paul Burglin for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.**—California is party to the interstate Driver License Compact (Veh. Code, § 15000 et seq.)[1] (the Compact), which provides that, with respect to specified motor vehicle offenses, including the one at issue in this case, conduct leading to an out-of-state conviction may be treated as if the conduct had occurred in the driver's home state. (§§ 15023, subd. (a)(2), 23626.) Application of the Compact requires sufficient evidence of conviction of a covered offense under a substantially similar statute. This appeal requires us to clarify the nature of the evidence sufficient to prove that the out-of-state conviction was based on conduct that would also violate a provision of our Vehicle Code.

The trial court found that evidence relied upon by the Department of Motor Vehicles (DMV) to prove an out-of-state conviction of driving under the influence of an of alcoholic beverage (DUI) was insufficient to prove that the violation from which the conviction arose would have constituted a violation of section 23152. We disagree and shall therefore reverse the judgment.

---

[1] All unspecified statutory references are to the Vehicle Code.

## FACTS AND PROCEEDINGS BELOW

On June 2, 2005, respondent Brian McGill Isaac was convicted in California of driving a vehicle under the influence of an alcoholic beverage in violation of section 23152, subdivision (b), which makes it "unlawful for any person who has [a] 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." Respondent's conviction was based on a finding by the San Francisco Superior Court that his blood-alcohol level at the time was 0.19 percent. Less than a month later, after learning he had been convicted of a substantially similar offense in Ohio less than 10 years earlier, the DMV suspended his driving privileges for two years.[2] (§§ 13352, subd. (a)(3), 23540, 23626.) As the suspension was mandatory (§ 13352, subd. (a)), no hearing was required (§ 14101, subd. (a)).

On August 16, 2006, respondent filed a petition for a writ of mandate asking the Marin County Superior Court to set aside the suspension order on the ground the DMV had failed to show that, if committed in this state, the Ohio offense would be a violation of section 23152. On November 9, 2006, the court granted the writ, finding the DMV "has not presented sufficient, admissible evidence to show that the conviction in Ohio was for 'driving' under the influence." DMV filed a timely notice of appeal on December 12, 2006.

## STANDARD OF REVIEW

As the judgment in this case is based on the trial court's application of the relevant provisions of the Vehicle Code to undisputed facts, we review the judgment de novo. (*Moles v. Gourley* (2003) 112 Cal.App.4th 1049, 1054 [5 Cal.Rptr.3d 555]; *McDonald v. Department of Motor Vehicles* (2000) 77 Cal.App.4th 677, 681–682 [91 Cal.Rptr.2d 826]; *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1519 [82 Cal.Rptr.2d 378] (*Draeger*).)

## DISCUSSION

■ Under the Compact, participating states provide one another reciprocal notification of certain driving violations (§ 15022), including "[d]riving a

---

[2] Respondent was also required to complete a "driving-under-the-influence program" pursuant to section 13352, subdivision (a)(3).

motor vehicle while under the influence of intoxicating liquor or a narcotic drug." (§ 15023, subd. (a)(2).) "'For the compact to apply, there must be sufficient evidence of conviction under a substantially similar statute. [Citation.] California thus may not give effect to out-of-state conviction reports unless '(1) the law of the reporting state pertaining to conviction is "substantially the same" as California law pertaining to the conviction; (2) the description of the violation from which the conviction arose is sufficient; and (3) the interpretation and enforcement of the law of the reporting state are "substantially the same" as the interpretation and enforcement of the California law in question.' ([Citation], quoting § 13363, subd. (b); see also § 15023, subd. (c) [where statutory language is not identical, 'violations of a substantially similar nature' in another state constitute reciprocal offenses].)" (*Moles v. Gourley, supra,* 112 Cal.App.4th at p. 1055.)

■ "'Section 23152 is the basic Vehicle Code provision prohibiting any person under the influence of alcohol or drugs from driving a motor vehicle.' (*Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372 [211 Cal.Rptr. 748, 696 P.2d 141], fn. omitted.) In relevant part, the statute makes it 'unlawful for any person who is under the influence of any alcoholic beverage . . . to drive a vehicle.' (§ 23152, subd. (a).) [¶] Thus, under California's DUI law, the relevant conduct is 'to drive.' (§ 23152, subd. (a).) The specified conveyance is 'a vehicle.' [Citations.]" (*Moles v. Gourley, supra,* 112 Cal.App.4th at pp. 1055–1056, fn. omitted.)

Respondent's central claim is that the DMV "did not tender to the trial court a single document that supported its contention that [his] Ohio conviction in 1995 involved the act of 'driving,'" which is a necessary element of the drunk driving offense described in section 23152. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753 [280 Cal.Rptr. 745, 809 P.2d 404] (*Mercer*).)

*The Evidence*

The fact of respondent's California DUI offense in 2005 is undisputed. The documentary evidence relating to the charges and conviction in Ohio, and the pertinent provisions of the Ohio Revised Code (ORC) and Traffic Code of the City of Columbus, Ohio (Traffic Code), were, without objection, judicially noticed by the trial court.

Appellant was, on March 12, 1995, charged in Ohio with the simultaneous commission of four offenses: *First*, that he did "operate" a vehicle while "under the influence of alcohol, a drug of abuse, or a combination of them" in violation of ORC section 4511.19, subdivision (A)(1)(a); *second*, that he did "operate" a vehicle while having "a concentration of at least two-hundredths of one gram but less than eight-hundredths of one gram by weight of alcohol per two hundred ten liters of [his] breath,"[3] in violation of ORC section 4511.19, subdivision (B)(3); *third*, that he did "operate a motor vehicle . . . without being in reasonable control of the vehicle" in violation of ORC section 4511.202; and *fourth*, that he did "operate a motor vehicle" in Ohio during a period in which his driver's license had been suspended or revoked in violation of ORC section 4507.02, subdivision (B)(1).

All four of the charges filed against respondent in the Franklin County, Ohio Municipal Court, which were in the form of sequentially numbered traffic citations, alleged in identical language that he committed all of the foregoing offenses at 3:15 a.m. on March 12, 1995, while traveling southbound on the Olentangy Freeway "between W. Wilson Bridge and Bethel Rd." A certified copy of the court docket shows that the charge of violation of ORC section 4511.19, subdivision (A)(1)(a), was "amended" to allege a violation of Traffic Code section 2133.01, and on October 26, 1995, respondent entered a plea of guilty to that offense and was convicted on that basis. Traffic Code section 2133.01 provides that "[n]o person shall operate any vehicle within [Columbus, Ohio] if, at the time of the operation, . . . [¶] (1) The person is under the influence of alcohol, a drug of abuse, or a combination of them [or] [¶] (2) The person has a concentration of eight-hundredths (0.08) of one (1) percent or more but less than seventeen-hundredths (0.17) of one (1) percent by weight per unit volume of alcohol in the person's whole blood." This offense is by its own terms "[e]quivalent" to "[a] violation of division (A) or (B) of Section 4511.19 of the [ORC]." (Traffic Code, §§ 2133.01, subd. (E)(1), 2133.011, subd. (A)(1).)[4] As a result of his conviction of Traffic Code section 2133.01, respondent was fined $500 and his license was suspended for one year, commencing on March 12, 1995, the date of the conduct upon which the four ORC violations were based.

---

[3] The Attorney General represents, and respondent does not dispute, that this is the equivalent of a blood-alcohol level of 0.10 percent. The fact that Ohio requires a higher blood-alcohol level to convict than the 0.08 percent California requires is not a statutory difference of concern, because a violation of Ohio law is necessarily a violation of California law.

[4] Traffic Code section 2133.011 states: "As used in Chapter 2133: [¶] (A) 'Equivalent offense' means . . . [¶] (1) A violation of division (A) or (B) of section 4511.19 of the Ohio Revised Code."

The citation charging appellant with a violation of ORC section 4511.19, subdivision (A)(1)(a), states on its face that respondent "[d]id operate [his] motor vehicle while under the influence of alcohol or drugs of abuse or the combined influence of alcohol or any drug of abuse." The citation charging him with simultaneously violating former subdivision (A)(3) of the same Ohio statute states that he "[d]id have a concentration of ten hundredths of one gram or more by weight of alcohol per 210 liters of breath." The citation charging a violation of ORC section 4511.202, failure to be in reasonable control of a vehicle, states that respondent was operating his vehicle in a "weaving course outside of marked lanes." Finally, the citation charging respondent with violation of ORC section 4507.02, subdivision (B)(1), operating a vehicle with a license that has been suspended or revoked, states that respondent was "driving under suspension, to wit: suspension from 04-05-94 to 04-05-97, case #9406276."

The trial court found that the foregoing evidence failed "to show that [respondent's] conviction in Ohio was for 'driving' under the influence." Respondent's contention that this finding was correct and justified the granting of the writ, is based on the analysis adopted in *Draeger, supra,* 69 Cal.App.4th 1511, which the trial court explicitly relied upon.

*Draeger*

In *Draeger,* the DMV suspended an individual's driver's license following two drunk driving convictions, one in California and the other in Florida. The trial court granted a petition for writ of mandate against the director of the DMV and ordered her to eliminate the Florida drunk driving conviction from the driver's record and set aside the order suspending his license. The Court of Appeal affirmed, holding there was insufficient evidence to show that the conviction under the Florida statute was actually for drunk driving.

■ *Draeger* commences with analyses of the Compact and other pertinent provisions of the Vehicle Code. " 'Basically, the Compact provides that a driver's entire record—including out-of-state convictions—will be known to his home state. For the four specified offenses—(1) manslaughter or negligent homicide; (2) driving while under the influence of liquor or drugs; (3) a felony in which a motor vehicle is used; and (4) hit-run driving which results in injury or death—the compact provides that the conduct leading to an out-of-state conviction will be treated as if the conduct had occurred in the driver's home state.' [Citation.]

"Accordingly, under section 15022, '[t]he licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code, or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the conviction was a result of the forfeiture of bail, bond or other security; and shall include any special findings made in connection therewith.' For purposes of suspending, revoking, or limiting the license to operate a motor vehicle, the licensing authority of the home state 'shall give the same effect to the conduct reported, pursuant to Section 15022 of this compact, as it would if such conduct had occurred in the home state, in the case of a conviction for: [¶] . . . [¶] (2) Driving a motor vehicle while under the influence of intoxicating liquor . . . .' (§ 15023, subd. (a).)

■ "Under section 13352, subdivision (a), the DMV 'shall immediately suspend or revoke, or record the court-administered suspension or revocation of, the privilege of any person to operate a motor vehicle upon receipt of a *duly certified abstract of the record of any court* showing that the person has been convicted of a violation of Section 23152 . . . .' (Italics added [by *Draeger*].) It must suspend the license for eighteen months if the driver is convicted of two violations of section 23152 within a seven-year period. (§§ 13352, subd. (a)(3), 23165.) Under section 13352, subdivision (d), and consistent with the Driver License Compact, '[a] conviction of an offense in any state, . . . which, if committed in this state, would be a violation of Section 23152, is a conviction of Section 23152 for purposes of this section, . . . The department shall suspend or revoke the privilege to operate a motor vehicle pursuant to this section upon receiving notice of that conviction.'

■ "Section 13363 provides additional direction concerning out-of-state convictions. Subdivision (a) states that DMV 'may, in its discretion, . . . suspend or revoke the privilege of any resident or nonresident to drive a motor vehicle in this State upon receiving notice of the conviction of the person in a state, . . . of the United States, . . . of an offense therein which, if committed in this State, would be grounds for the suspension or revocation of the privilege to operate a motor vehicle.' *Moomjian v. Zolin* (1993) 12 Cal.App.4th 1606, 1613–1614 [16 Cal.Rptr.2d 335], holds the specific, mandatory provisions of section 13352, subdivision (a)(3) control over the discretionary provisions of section 13363, subdivision (a). Subdivision (b) of section 13363 states that DMV 'shall not give effect to [a report of an out-of-state conviction] pursuant to . . . Section 15023 unless the department is satisfied that the law of such other place pertaining to the conviction is substantially the same as the law of this State pertaining to such conviction and that the description of the violation from which the conviction arose, is

sufficient and that the interpretation and enforcement of such law are substantially the same in such other place as they are in this State.' *Moomjian* does not expressly limit the application of the mandatory provisions of section 13363, subdivision (b)." (*Draeger, supra*, 69 Cal.App.4th at pp. 1516–1517.)

The "pivotal question" in *Draeger* was "*what* DMV is required to compare to determine whether Draeger's Florida conviction would be a drunk driving conviction under section 23152. Does California, the home state of the licensee, look to the facts underlying the conviction in Florida, a reporting party state; or does California simply match the elements of its own cognate offense to see if they are congruent?" (*Draeger, supra*, 69 Cal.App.4th at p. 1519.) Acknowledging that the Compact "is ambiguous as to which test the Legislature intended California to apply to determine whether an out-of-state drunk driving conviction would be a drunk driving conviction under section 23152" (*Draeger*, at p. 1520), and that there were competing considerations, the court resolved the issue on the basis of section 13363. As earlier noted, section 23152, subdivision (b) "provides that California will not give effect to such reports unless DMV is satisfied that: (1) the law of the reporting state pertaining to conviction is 'substantially the same' as California law pertaining to the conviction; (2) the description of the violation from which the conviction arose is sufficient; and (3) the interpretation and enforcement of the law of the reporting state are 'substantially the same' as the interpretation and enforcement of the California law in question." (*Draeger*, at p. 1521.)

The *Draeger* court affirmed the ruling against DMV for two related reasons. First, the Florida statute was not in all respects "substantially" similar to section 23152 on its face. Although the first prong of the Florida statute, which prohibits driving under the influence of alcohol, is substantially the same as section 23152, the Florida statute also applies to a person who is under the influence of alcoholic beverages while "in actual physical control of a vehicle," (Fla. Stat., § 316.193), which does not necessarily include *driving* the vehicle, and may represent the sort of conduct that in California is generally prosecuted as public drunkenness under Penal Code section 647, subdivision (f). (*Draeger, supra*, 69 Cal.App.4th at p. 1522.) Second, while DMV could have cured the problem by providing "sufficient admissible evidence that Draeger was convicted of drunk *driving* in Florida" (*ibid.*), it had failed to do so. The documents that formed the basis for the DMV action were the police report and the traffic citation. The Compact barred consideration of the police report because it was not an abstract of judgment and did not ordinarily form part of the record of conviction. (*Draeger*, at p. 1523.) The traffic citation was, however, a part of the record of conviction because, as here, it served as the charging document. Furthermore, the traffic citation— which indicated Draeger "was stopped after the officer observed his vehicle running a stop sign and crossing the center line" (*id.* at p. 1518)—sufficiently showed Draeger was "driving" a vehicle at the time of the offense. The

problem in *Draeger* was that the traffic citation was "insufficient, standing alone, to establish Draeger was *convicted*" of the offense. (*Id.* at p. 1523.) Though the district attorney possessed a certified copy of the docket of the Florida court showing Draeger had been convicted of the offense described on the traffic citation, he inexplicably failed to make it a part of the court record. (*Id.* at p. 1523.) Due to this "missing piece of the puzzle," the court felt compelled to affirm the judgment in Draeger's favor, leaving it to the Director of the DMV "to determine whether DMV can or should pursue suspension of Draeger's driving privilege under section 13352 based on a more complete record of conviction." (*Draeger*, at p. 1523.)

*Analysis*

DMV agrees that under *Mercer, supra*, 53 Cal.3d 753, "operating" a vehicle is not "substantially the same" as "driving" a vehicle. As pointed out in *Mercer*, "[i]n everyday usage the phrase, 'to drive a vehicle,' is understood as requiring evidence of volitional movement of a vehicle. Numerous dictionary definitions—including Webster's Third New International Dictionary (1981), . . . support a definition of 'drive' that includes movement. [Citation.] We believe these definitions are consistent with the usual and ordinary understanding of that term, and suggest the sense in which the word was intended by the Legislature in the present context." (*Mercer*, at p. 763, fn. omitted.) *Mercer* explains that California is among the minority of states that prohibit simply "driving" a vehicle while intoxicated; most states prohibit " 'driving or operating' or simply 'operating' a vehicle . . . , or 'driving or being in [or "having"] actual physical control' of a vehicle." (*Id.* at p. 766.) The overwhelming majority of those statutes have been interpreted as ascribing to the words "being in actual physical control of" or "operating" a vehicle "a broad scope not limited to or dependent on volitional movement of a vehicle. In fact, most cases uphold a finding of 'operation' or 'being in actual physical control' even when . . . the arrestee was found asleep, slumped over the steering wheel of an operable car with its [motor] running." (*Id.* at p. 767, fn. omitted.)

DMV also agrees with respondent that, because "operating" a motor vehicle is not "substantially the same" as "driving" such a vehicle, it could not suspend his driver's license except upon sufficient admissible evidence that his Ohio conviction involved drunk *driving*. The only disagreement between the parties is whether DMV has done so.

Respondent does not respond to DMV's claim that the statements on two of the traffic citations—that at the time of all of the ORC offenses with which he was charged respondent was "weaving course outside of marked lanes"

and "driving" with a suspended license—support but one reasonable inference: that he was then "driving."[5] Implicitly conceding the point, respondent claims the evidence he was "weaving course" and "driving" at the time of the offense is "inadmissible" and was therefore improperly considered. This is so, respondent maintains, because the statements on the two traffic citations DMV relies upon do not charge the offense to which he pled guilty, he was not convicted of any of the offenses charged by those citations, and, in any event, the statements on the two citations indicating he was "driving" do not establish that the declarant actually "observed" his vehicle "weaving course outside of marked lanes" or had personal knowledge he was "driving" with a suspended license, and the statements therefore "may have been based on mere hearsay or speculation, and may have even later been found false." *Draeger*, the sole case respondent relies upon, does not support his argument.

Respondent's argument is apparently based upon the statement in *Draeger* that the DMV had in that case "failed to provide sufficient *admissible* evidence that Draeger was convicted of drunk *driving* in Florida." (*Draeger, supra*, 69 Cal.App.4th at p. 1522, first italics added.) Respondent assumes the admissibility to which this statement refers is that measured by the conventional rules of evidence applicable at trial in civil and criminal proceedings, such as the hearsay rule. This is clearly not the case. The context makes it obvious that the standard of admissibility the court had in mind was simply whether the documents that formed the basis of DMV's administrative determination that Draeger's out-of-state DUI conviction involved "driving" were "part of the record of conviction" in Florida, which is all that was necessary to render them administratively admissible.[6] The police report was inadmissible, the court explained, because it was neither an abstract of judgment nor part of the record of conviction. (*Id.* at p. 1523.) The traffic citation *was* admissible, however, because it served as the charging document and was therefore "properly included in the record of conviction." As nearly as can be discerned from the opinion, Draeger was not convicted (or even charged) in Florida with "running a stop sign and crossing the center line," as stated on the citation, but only of "driving or [being] in actual physical control of a vehicle . . . [while] under the influence of alcoholic beverages." (*Id.* at p. 1518, italics omitted.) Nothing in *Draeger* indicates that the statement indicating Draeger was "driving" at the time of that offense would have been inadmissible if it did not appear on the citation charging him with DUI but, as here, on other citations charging him with contemporaneous

---

[5] Respondent's failure to explain or deny such evidence may also be used by DMV or by the court in determining what inferences to draw from the evidence. (Evid. Code, § 413.)

[6] If the court did not consider the traffic citation admissible evidence that Draeger's conviction of "operating a vehicle under the influence" involved "driving" it would not have been necessary for it to go on to discuss the absence of the court docket or any other evidence of a *conviction* of that offense.

offenses that necessarily involved "driving" and were dismissed in consideration of his plea to the DUI charge. Thus, *Draeger* does not support respondent's contention that the traffic citations DMV relied upon to suspend his license are inadmissible to show that his Ohio DUI conviction involved "driving." Finally, unlike *Draeger*, the traffic citations do not "stand alone." The certified court docket missing in *Draeger* is not missing here, and it establishes that respondent was *convicted* of an offense which, if committed in this state, would be a violation of section 23152.

Respondent's claim, which the trial court apparently accepted, that the evidence showing that the out-of-state conviction arose from conduct that involved driving was "mere hearsay," ignores an exception to the hearsay rule applicable in administrative DMV proceedings to suspend a person's driving privilege. In *Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562 [62 Cal.Rptr.3d 234], the DMV offered an officer's sworn statement and an unsworn arrest report to prove Hildebrand was driving when he was arrested, at which time his vehicle was stuck on railroad tracks. Rejecting Hildebrand's claim that the observations in these documents were inadmissible to prove he was driving, the court stated as follows: "In meeting its burden at the administrative level, the DMV may present '[a]ny relevant evidence . . . if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions.' (Gov. Code, § 11513, subd. (c).)" (*Hildebrand*, at p. 1569.) The court acknowledged that "hearsay evidence is not '. . . sufficient in itself to support a finding unless it would be admissible over objection in civil actions' " (*ibid.*, citing Gov. Code, § 11513, subd. (d) and *Gananian v. Zolin* (1995) 33 Cal.App.4th 634 at p. 638 [39 Cal.Rptr.2d 384]), but pointed out that under Evidence Code section 1280 the officer's sworn statement and unsworn report each qualified as an admissible public employee record in an administrative proceeding, even to the extent that each relied upon the personal observations of another public employee.[7] (*Hildebrand*, at p. 1570.)

---

[7] Evidence Code section 1280 makes admissible a writing that records an act, condition, or event if "(a) [t]he writing was made by and within the scope of duty of a public employee[;] [¶] (b) [t]he writing was made at or near the time of the act, condition, or event[; and] [¶] (c) [t]he sources of information and method and time of preparation were such as to indicate its trustworthiness."

As stated in *Gananian v. Zolin, supra,* 33 Cal.App.4th 634, "[t]he object of this hearsay exception 'is to eliminate the calling of each witness involved in [the] preparation of the record and substitute the record of the transaction instead. [Citations.]' [Citation.] . . . Assuming satisfaction of the exception's other requirements, '[t]he trustworthiness requirement . . . is established by a showing that the written report is based upon the observations of public employees who have a *duty* to observe the facts and report and record them correctly.' [Citation.]" (*Id.* at pp. 639–640, fns. omitted.)

Entirely apart from the applicable exception to the hearsay rule, we must keep in mind the vast difference between the protections afforded a driver whose license may be suspended as the result of an administrative determination by DMV, which may properly be made on the basis of the record of a foreign conviction, and the protections afforded a criminal defendant, who has a due process right to be tried only upon competent evidence properly offered and admitted at trial which meets the People's burden to prove guilt beyond a reasonable doubt (see *People v. Crane* (2006) 142 Cal.App.4th 425, 434 [48 Cal.Rptr.3d 334]), and to be sentenced in accordance with a highly protective regime. Thus, as explained in *McDonald v. Department of Motor Vehicles, supra*, 77 Cal.App.4th at pages 688–689, the test to determine whether an out-of-state DUI conviction arose out of conduct which, if committed in California, would violate section 23152, is justifiably far less demanding of the state than the test to determine whether a foreign conviction can be considered a qualifying prior conviction under the three strikes law.

Finally, in determining the proper test for determining whether an out-of-state drunk driving conviction would be a drunk driving conviction under section 23152, as to which the Compact is ambiguous, we must be mindful of the legislative directive that the Compact and implementing provisions of the Vehicle Code are to be liberally construed (§ 15028) so as to accomplish the Compact's important remedial purposes. (See *McDonald v. Department of Motor Vehicles, supra*, 77 Cal.App.4th at p. 687.) The strict test respondent urges us to apply would render the Compact and implementing provisions of our Vehicle Code nugatory insofar as they apply to drunk driving convictions in those states party to the Compact that make it unlawful to "operate" or "physically control" rather than "drive" a vehicle while under the influence of alcohol or drugs, particularly when, as here, the conviction is based on a plea of guilty or nolo contendere. (See *Draeger, supra*, 69 Cal.App.4th at p. 1520.)

For the foregoing reasons, we conclude that the traffic citations issued to respondent on March 12, 1995, which describe conduct that all occurred at the same time and place—and specifically the two citations indicating that respondent was then "weaving course outside of marked lanes" and "driving" with a suspended license—are admissible and sufficient to show that his out-of-state conviction for "operating a vehicle while under the influence of alcohol or drugs" involved "driving." DMV therefore provided sufficient evidence that respondent's Ohio conviction was based on conduct that, if committed in this state, would violate section 23152.

## DISPOSITION

The judgment is reversed. The parties shall bear their own costs.

Lambden, J., and Richman, J., concurred.

A petition for a rehearing was denied October 10, 2007, and respondent's petiton for review by the Supreme Court was denied January 3, 2008, S157790. Werdegar, J., did not participate therein.