Filed 5/3/13  Turner v. Shiomoto CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAURENCE TURNER, | |
| Plaintiff and Appellant, | G047542 |
| v. | (Super. Ct. No. 30-2011-00505418) |
| JEAN SHIOMOTO, as Chief Deputy Director, etc., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Affirmed.

Law Offices of Myles L. Berman and William J. Duffy for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, and Kenneth C. Jones, Deputy Attorney General, for Defendant and Respondent.

\*          \*          \*

Defendant and respondent Jean Shiomoto, as Chief Deputy Director of the Department of Motor Vehicles (DMV), suspended plaintiff and appellant Laurence Turner's driving privileges for two years after learning he was convicted of driving under the influence of alcohol in Arizona. Turner filed a petition for writ of mandate seeking to overturn the suspension, arguing the DMV could not rely on his Arizona conviction to suspend his driving privileges because no evidence showed Turner's Arizona conviction was based on conduct that would violate California's driving under the influence statute.

The trial court denied Turner's petition and we affirm that decision. Although the Arizona statute also outlaws being in actual physical control of a vehicle while under the influence of alcohol, both the Arizona and California statutes outlaw driving a vehicle while under the influence of alcohol. The Arizona Department of Transportation provided the DMV with sufficient evidence showing Turner was convicted for driving under the influence, not simply controlling a vehicle while under the influence. Under these circumstances, the Vehicle Code required the DMV to suspend Turner's driving privileges.

I

FACTS AND PROCEDURAL HISTORY

In August 2001, Turner was convicted of driving under the influence of alcohol with a blood alcohol content of 0.08 percent or higher in violation of Vehicle Code section 23152, subdivision (b).[1] Nearly ten years later, he was arrested in Arizona and charged with (1) "DUI – Slightest Degree" in violation of Arizona Revised Statutes section 28-1381, subdivision (A)(1); (2) "DUI – Over .08" in violation of Arizona Revised Statutes section 28-1381, subdivision (A)(2); and (3) "Extreme DUI" in violation of Arizona Revised Statutes section 28-1382, subdivision (A)(1).

---

[1] All statutory references are to the Vehicle Code unless otherwise stated.

In June 2011, Turner entered into a plea agreement with the Arizona prosecutor in which he pleaded guilty to the second count in exchange for dismissal of the remaining counts. Specifically, Turner signed a plea agreement pleading guilty to "DRIVING UNDER THE INFLUENCE OF ALCOHOL, in violation of A.R.S. §28-1381(A)(2), a class 1 misdemeanor . . . ." Based on the plea agreement, the Arizona Justice Court entered judgment against Turner for "Driving Under the Influence of Alcohol w/bac .08 Or Greater, A.R.S. § 28-1381A2." The Arizona Department of Transportation promptly sent an "Out-of-State Conviction Report" and various court records to the DMV notifying it of Turner's conviction.

Upon receiving the Arizona conviction report and records, the DMV suspended Turner's license for two years and ordered him to complete a driving-under-the-influence program before seeking to reinstate his license. The DMV suspended Turner's license under section 13352, subdivision (a)(3), because it determined the Arizona conviction constituted a second conviction under section 23152 for driving under the influence of alcohol within a ten-year period.

Turner filed a petition for writ of mandate against the DMV challenging its suspension of his driver's license. He argued the Arizona conviction did not constitute a second driving under the influence conviction under section 23152 and therefore the DMV could not rely on it to suspend his driving privileges. According to Turner, the Arizona statute under which he was convicted outlawed both driving and having actual physical control of a vehicle while under the influence of alcohol, but section 23152 only prohibited driving while under the influence. Consequently, Turner argued, the DMV could not treat his Arizona conviction as a conviction under section 23152 unless the Arizona conviction report and court records showed he was actually driving while under the influence, and the Arizona documents failed to establish that essential fact.

The trial court received the administrative record regarding the DMV's decision to suspend Turner's driving privileges and conducted a hearing on Turner's writ

petition. After taking the matter under submission, the court denied Turner's petition and entered judgment against him. Turner timely appealed.

II

DISCUSSION

A. *Standard of Review*

The judgment in this action is based on the trial court's application of the relevant statutory provisions to the undisputed facts set forth in the administrative record. The parties do not dispute the facts, but disagree on how to interpret them. Accordingly, we review the judgment de novo. (*Isaac v. Department of Motor Vehicles* (2007) 155 Cal.App.4th 851, 855 (*Isaac*); *Moles v. Gourley* (2003) 112 Cal.App.4th 1049, 1054 (*Moles*); *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1519-1520 (*Draeger*).)

Without specifically addressing the de novo standard of review, the DMV asserts we must uphold its suspension of Turner's driving privileges unless we find its decision was arbitrary, capricious, or entirely lacking in evidentiary support. In making this contention, however, the DMV fails to cite any authority that involves its decision to suspend a person's driving privileges based on a drunk driving conviction in another state. The foregoing cases establish the de novo standard as the controlling standard of review in this situation and we therefore apply it in this case.

B. *The Driver License Compact and California's Statutory Scheme for Suspending Driving Privileges Based on Drunk Driving Convictions*

California and Arizona participate in the interstate Driver License Compact (Compact) along with 37 other states and the District of Columbia. (§ 15000; Ariz. Rev. Stat., § 28-1852; see also Historical and Statutory Notes, 66A West's Ann. Veh. Code (2013 pocket supp.) ch. 6, p. 6.) The Compact "'is intended to increase highway and street safety by enhancing the degree of compliance with laws governing the operation of motor vehicles in party states. [Citation.]' [Citation.]" (*Moles*, *supra*, 112 Cal.App.4th

4

at p. 1055.) Another important purpose of the compact is to "[m]ake the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable by considering the overall compliance with motor vehicle laws . . . as a condition precedent to the continuance or issuance of any license . . . in any of the party states." (§ 15020, subd. (b)(2); *McDonald v. Department of Motor Vehicles* (2000) 77 Cal.App.4th 677, 682 (*McDonald*).) The Compact is liberally construed to achieve these purposes. (*Moles*, at p. 1055.)

The Compact requires party states to report all convictions of an out-of-state driver to the state that issued the driver a license to operate a motor vehicle. (§ 15022; *McDonald*, *supra*, 77 Cal.App.4th at p. 682.) Among other requirements, this report must "*describe* the violation *specifying* the section of the statute, code, or ordinance violated."[2] (§ 15022, italics added.) Upon receiving a report of an out-of-state conviction from another party state, "[t]he licensing authority in the home state . . . shall give the same effect to the conduct reported . . . as it would if such conduct had occurred in the home state, in the case of a conviction for: [¶] . . . [¶] (2) Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug . . . ."[3] (§ 15023, subd. (a); Ariz. Rev. Stat., § 28-1852; *McDonald*, at pp. 682-683.)

---

[2] The Compact also requires the report to "clearly identify the person convicted; . . . identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the conviction was a result of the forfeiture of bail, bond or other security; and shall include any special findings made in connection therewith." (§ 10522.)

[3] The Compact also requires home states to treat an out-of-state conviction for the following crimes as if the underlying conduct occurred in the driver's home state: (1) "Manslaughter or negligent homicide resulting from the operation of a motor vehicle"; (2) "Any felony in the commission of which a motor vehicle is used"; and (3) "Failure to stop and render aid in the event of a motor vehicle accident resulting in the death or personal injury of another." (§ 15023, subd. (a).)

5

Consistent with the Compact's terms, section 13352, subdivision (a), requires the DMV to "immediately suspend or revoke the privilege of a person to operate a motor vehicle upon the receipt of an abstract of the record of a court showing that the person has been convicted of a violation of Section 23152 [California's basic statutory provision outlawing drunk driving] . . . ." (§13352, subd. (a).) Section 13352, subdivision (d), makes clear that the DMV's obligation to immediately suspend a driver's license for a drunk driving conviction also applies to out-of-state convictions: "A conviction of an offense in [another] state . . . that, if committed in this state, would be a violation of Section 23152, is a conviction of Section 23152 for the purposes of this section . . . . The department shall suspend or revoke the privilege to operate a motor vehicle pursuant to this section upon receiving notice of that conviction." (§ 13352, subd. (d); *Draeger*, *supra*, 69 Cal.App.4th at p. 1523.) The DMV must suspend a driver's license for two years if the driver is convicted of two violations of section 23152 within a 10-year period. (§§ 13352, subd. (a)(3), 23540.)

Before taking action, however, the DMV must receive sufficient evidence establishing the out-of-state conviction was under a statute substantially similar to a California statute punishing the same conduct. (*Isaac*, *supra*, 155 Cal.App.4th at p. 856.) Specifically, the DMV may not suspend or revoke a driver's license based on an out-of-state conviction "'unless "(1) the law of the reporting state pertaining to conviction is 'substantially the same' as California law pertaining to the conviction; (2) the description of the violation from which the conviction arose is sufficient; and (3) the interpretation and enforcement of the law of the reporting state are 'substantially the same' as the interpretation and enforcement of the California law in question." [Citation.]' [Citation.]" (*Ibid*., *Moles*, *supra*, 112 Cal.App.4th at p. 1055; *Draeger*, *supra*, 69 Cal.App.4th at p. 1521; see also § 13363, subd. (b).)

Because section 13352 requires the DMV to immediately suspend a driver's license upon receiving a report of an in-state or out-of-state conviction for

driving under the influence, the driver is *not* entitled to an administrative hearing to challenge the suspension. (§ 14101; *Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 380, fn. 8 (*Pollack*); *Isaac*, *supra*, 155 Cal.App.4th at p. 855.) Instead, the driver must bring a civil action in court to set aside the suspension.[4] (*Draeger*, *supra*, 69 Cal.App.4th at p. 1524.) A driver, however, is entitled to an administrative hearing to challenge the accuracy of the report or other records upon which the DMV relied in suspending his or her license.[5] (*Pollack*, at p. 380, fn. 8; *Draeger*, at p. 1524.)

C.      *The California and Arizona Drunk Driving Statutes*

Section 23152 is the basic statutory provision prohibiting any person from driving a motor vehicle in California while under the influence of alcohol. (*Isaac*, *supra*, 155 Cal.App.4th at p. 856.) In pertinent part, that statute makes it unlawful for any person who "has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." (§ 23152, subd. (b).) The essential conduct under section 23152 is driving a vehicle, which requires "'evidence of volitional movement of a vehicle.'" (*Draeger*, *supra*, 69 Cal.App.4th at p. 1521.) "California is among the minority of states that prohibit simply 'driving' a vehicle while intoxicated; most states prohibit "'driving or operating" or simply "operating" a vehicle . . . , or "driving or being in [or 'having'] actual physical control" of a vehicle.' [Citation.] The overwhelming majority of those statutes have been interpreted as ascribing to the words 'being in actual physical control of' or 'operating' a vehicle 'a broad scope not limited to or dependent on volitional movement of a vehicle. . . .' [Citation.]" (*Isaac*, *supra*, 155 Cal.App.4th at p. 861.)

_____

[4]      Both the United States and California Supreme Courts have held that due process does not require an administrative hearing before a state suspends a driver's privilege to operate a motor vehicle. (*Pollack*, *supra*, 38 Cal.3d at p. 380.)

[5]      Turner did not seek an administrative hearing to challenge the accuracy of the records on which the DMV relied and his appellate briefs do not challenge the accuracy of those records.

7

Turner's out-of-state conviction was for violating Arizona Revised Statutes, section 28-1381, subdivision (a)(2), which makes it "unlawful for a person to drive *or be in actual physical control* of a vehicle . . . [¶] . . . [¶] If the person has an alcohol concentration of 0.08 or more within two hours of driving or being in actual physical control of the vehicle . . . ." (Italics added.) Accordingly, a driver may violate the Arizona statute not only by driving a vehicle, but also by merely being in actual physical control of a vehicle while under the influence of alcohol.

D. *California's Statutory Scheme Required the DMV to Suspend Turner's License Based on the Arizona Conviction*

California's statutory scheme required the DMV to immediately suspend Turner's license based on the Arizona conviction if (1) the Arizona statute under which he was convicted is substantially similar to section 23152 and (2) the documents the DMV received from the Arizona Department of Transportation provided sufficient proof Turner was convicted for conduct that would violate section 23152. (*Moles*, *supra*, 112 Cal.App.4th at pp. 1056-1057.) Turner contends neither of these conditions was satisfied and therefore the trial court erred in upholding his suspension. We reject that contention for the reasons discussed below.

1. The California and Arizona Statutes are Substantially Similar

To determine whether the California and Arizona statutes are substantially similar we must examine the *conduct* the statutes prohibit, not the elements of the offenses the statutes describe. (*Draeger*, *supra*, 69 Cal.App.4th at pp. 1521-1522; see also *McDonald*, *supra*, 77 Cal.App.4th at pp. 688-689.) Here, the California statute prohibits driving a vehicle with a blood alcohol content of 0.08 percent or higher while the Arizona statute prohibits both driving a vehicle and being in actual physical control of a vehicle with a blood alcohol content of 0.08 percent or higher. (Compare § 23152, subd. (b) and Ariz. Rev. Stat., § 28-1381, subd. (A)(2).) The Arizona statute therefore

8

covers a broader range of conduct. (*Draeger*, at pp. 1522-1523 [Florida statute prohibiting a person from driving or being in actual physical control of a vehicle while under the influence of alcohol outlaws a broader range of conduct than section 23152]; see also *Moles*, *supra*, 112 Cal.App.4th at p. 1058 [Virginia statute prohibiting driving or operating a vehicle while under the influence of alcohol outlaws a broader range of conduct than section 23152].)

The California and Arizona statutes, however, both make it unlawful for a person to drive with a blood alcohol content of 0.08 percent or higher. (Compare § 23152, subd. (b) ["It is unlawful for any person . . . to drive a vehicle" with a blood alcohol content of 0.08 percent or higher] and Ariz. Rev. Stat., § 28-1381, subd. (A)(2) ["It is unlawful for a person to drive . . . a vehicle" with a blood alcohol content of 0.08 or higher].) Accordingly, the two statutes are substantially similar as they relate to driving while under the influence of alcohol. Turner's challenge therefore turns on whether the conviction report and documents Arizona provided the DMV clearly show his Arizona conviction was based on driving a vehicle, as opposed to being in "'actual physical control of a vehicle.'" (*Draeger*, *supra*, 69 Cal.App.4th at p. 1522 [propriety of DMV's reliance on conviction under Florida statute prohibiting driving or being in actual physical control of a vehicle while under the influence of alcohol turned on whether the Florida records clearly showed the conviction was for driving while intoxicated]; see also *Moles*, *supra*, 112 Cal.App.4th at pp. 1058, 1060 [same for Virginia statute prohibiting driving or operating a vehicle while under the influence of alcohol].)

Turner argues the two statutes are not substantially similar because the California statute requires a person have a blood alcohol content of 0.08 percent or higher "*at the time of driving*" (§ 23152, subd. (b), italics added; CALCRIM No. 2111), but the Arizona statute merely requires a person have a blood alcohol content of 0.08 percent or higher "*within two hours of driving*" (Ariz. Rev. Stat., § 28-1381, subd. (A)(2), italics added). This argument ignores the rebuttable presumption the California statute

9

establishes. Specifically, section 23152, subdivision (b), establishes a rebuttable presumption that a person had a blood alcohol content of 0.08 percent or higher at the time of driving if a chemical test shows the person had a blood alcohol content of 0.08 percent or higher within three hours after driving.[6] Because of that presumption, all conduct that would violate the Arizona statute also would either violate the California statute or give rise to a rebuttable presumption a person violated the California statute. Accordingly, we reject Turner's argument because the substantial similarity analysis requires us to examine the conduct prohibited by the statutes, not the elements of the offense. (*Draeger*, *supra*, 69 Cal.App.4th at pp. 1521-1522; see also *McDonald*, *supra*, 77 Cal.App.4th at pp. 688-689.) We conclude the California and Arizona statutes are substantially similar "where the description of the violation from which the conviction arose clearly shows the conviction was based on drunk driving." (*Draeger*, at p. 1522, italics omitted.) We now turn to that question.

2. The Arizona Conviction Report and Record Adequately Establish Turner Engaged in Conduct That Violated Section 23152

The DMV's receipt of an out-of-state conviction report or "abstract of the record of a court" showing a person was convicted of an offense involving conduct that would violate section 23152 requires the DMV to immediately suspend the person's driving privileges. (§§ 13352, subds. (a) & (d), 15023, subd. (a); see also *Moles*, *supra*, 112 Cal.App.4th at pp. 1059-1060.) The report or record must contain proof that the person was actually convicted of a crime based on conduct that would violate section 23152; evidence of the offense alone is not sufficient. (*Moles*, at p. 1059; *Draeger*, *supra*, 69 Cal.App.4th at p. 1523.) *Draeger*, *Moles*, and *Isaac* explain what

---

6    In pertinent part, section 23152, subdivision (b), states as follows: "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

10

records are sufficient to show an out-of-state conviction was based on conduct outlawed by section 23152.

In *Draeger*, the DMV relied solely on a police report and traffic citation to suspend a driver's license based on his conviction under a Florida statute that outlawed both driving and being in actual physical control of a vehicle while under the influence of alcohol. The Court of Appeal affirmed the trial court's decision overturning the suspension because the DMV failed to provide any evidence the driver's conviction was based on conduct that would violate section 23152. The *Draeger* court explained the DMV could not rely on the police report because it was not part of the record of conviction. As for the traffic citation, the *Draeger* court explained the DMV could consider it as part of the record of conviction, but the citation standing alone was merely the charging document and therefore did not establish the driver was convicted of an offense. The DMV also needed the Florida court docket or some other record showing the driver was actually convicted of driving under the influence in Florida, but the DMV failed to present that evidence. (*Draeger*, *supra*, 69 Cal.App.4th at pp. 1522-1523.)

In *Moles*, the Court of Appeal upheld the DMV's suspension based on the driver's conviction under a Virginia statute that made it unlawful for a person to drive or operate a motor vehicle while under the influence of alcohol. The driver argued the Virginia records on which the DMV relied failed to show he was convicted of driving while under the influence, as opposed to Virginia's broader prohibition against operating a vehicle while under the influence. The *Moles* court rejected that argument and found the Virginia records identifying "'driving while intox., 1st' as the 'reason for conviction'" adequately established the driver was convicted for driving under the influence, as opposed to merely operating a vehicle under the influence. (*Moles*, *supra*, 112 Cal.App.4th at pp. 1059-1060.)

Finally, in *Isaac*, the DMV suspended a driver's license based on his conviction under an Ohio statute that outlawed operating a vehicle while under the

11

influence of alcohol. The driver argued his suspension should be overturned because the DMV failed to present any evidence showing he was convicted of an offense that involved driving a vehicle, as opposed to merely operating one. (*Isaac*, *supra*, 155 Cal.App.4th at pp. 856-857.) The *Isaac* court rejected that argument because the traffic citations charging the driver with operating a vehicle while under the influence also charged him with (1) failing to reasonably control his vehicle because he "was operating his vehicle in a 'weaving course outside marked lines'" and (2) "'driving'" with a suspended license. The *Isaac* court found these additional charges supported the reasonable inference that the driver was driving the vehicle, as opposed to merely operating it. (*Id*. at pp. 857-858, 861-862.)

The driver in *Isaac* argued the court could not consider the statements included in these other charges because they were dismissed when he pleaded guilty to operating a vehicle while under the influence of alcohol. The *Isaac* court rejected this argument, explaining the rules of evidence ordinarily applicable in civil and criminal proceedings did not apply in a DMV administrative hearing. The court concluded the DMV could consider the statements in the citations because they constituted part of the Ohio record of conviction as statements lodged in the citation or charging document. (*Isaac*, *supra*, 155 Cal.App.4th at pp. 862-863.)

The *Isaac* court emphasized the governing standards in an administrative proceeding differed from those found in a criminal trial: "[W]e must keep in mind the vast difference between the protections afforded a driver whose license may be suspended as the result of an administrative determination by DMV, which may properly be made on the basis of the record of a foreign conviction, and the protections afforded a criminal defendant, who has a due process right to be tried only upon competent evidence properly offered and admitted at trial which meets the People's burden to prove guilt beyond a reasonable doubt [citation], and to be sentenced in accordance with a highly protective regime." (*Isaac*, *supra*, 155 Cal.App.4th at p. 864.) The *Isaac* court further

12

explained that the strict evidentiary standards the driver sought to impose on the DMV "would render the Compact and implementing provisions of our Vehicle Code nugatory insofar as they apply to drunk driving convictions in those states party to the Compact that make it unlawful to 'operate' or 'physically control' rather than 'drive' a vehicle while under the influence of alcohol or drugs, particularly when, as here, the conviction is based on a plea of guilty or nolo contendere." (*Ibid*.)

Based on these controlling standards, we conclude the Arizona court records and conviction report provide adequate evidence to support the DMV's determination Turner was convicted of driving a vehicle while under the influence, not merely controlling a vehicle. The plea agreement Turner signed states he pleaded guilty to "DRIVING UNDER THE INFLUENCE OF ALCOHOL, in violation of A.R.S., §28-1381(A)(2)." The guilty plea Turner signed likewise stated he was pleading guilty to "Driving Under the Influence of Alcohol w/bac .08 Or Greater, a violation of ARS § 28-1381A2." The judgment the Arizona court entered based on the plea agreement and plea found Turner guilty of "Driving Under the Influence of Alcohol w/bac .08 Or Greater, A.R.S. § 28-1381A2." Even the "Out-Of-State Conviction Report" the Arizona Department of Transportation sent to the DMV identified "DUI WITH ALCOHOL CONCENTRATION OF .08 OR MORE" as the offense for which Turner was convicted. All of these records unmistakably refer to Turner driving a vehicle while under the influence of alcohol, not merely being in actual physical control of a vehicle.

Turner contends these records do not establish he was driving while under the influence of alcohol. According to Turner, "[a]ll violations of Arizona Revised Statute[s] section 28-1381, subd. (A)(2) are commonly and colloquially referred to as driving under the influence in Arizona." He further contends the reference to "'Driving Under the Influence of Alcohol'" in these documents merely refers to "the short title of the crime [for which he was] charged and convicted." We disagree.

13

Turner cites no authority or evidence to support his contention that the reference to driving under the influence in the foregoing documents is merely an informal or shorthand means of referring to the crime for which he was convicted rather than the conduct in which he engaged. A plea agreement, plea, and judgment are not informal documents in which the parties and the court commonly use loose or vague language. To the contrary, they are important, formal documents with a clear and specific legal effect depending on the language used.

More importantly, these documents do not state Turner pleaded guilty to, and was convicted of, violating Arizona Revised Statutes section 28-1381, subdivision (A)(2). Instead, they state he pleaded guilty to, and was convicted of, driving under the influence of alcohol in violation of that statute. The plain meaning of this language describes Turner's conduct that violated the statute. The language does not provide a vague and generic summary of the crime for which Turner was convicted. If Turner was simply in actual physical control of his vehicle, he could have pleaded guilty to that conduct in violation of the same statute, but he did not do so.

We find no material difference between the facts in this case and the facts in *Moles*. Both the Virginia statute at issue in *Moles* and the Arizona statute at issue here outlawed driving *and* either operating or controlling a vehicle while under the influence of alcohol. (*Moles*, *supra*, 112 Cal.App.4th at p. 1056; Ariz. Rev. Stat., § 28-1381, subd. (A)(2).) The Virginia records the DMV relied on to suspend the driving privileges in *Moles* simply stated "'driving while intox., 1st' as the 'reason of conviction.'" (*Moles*, at p. 1060.) The *Moles* court concluded this language adequately established the driver actually drove while intoxicated, rather than merely operating a vehicle while intoxicated, and therefore upheld the DMV's suspension. (*Ibid*.) The Arizona records here are comparable to those in *Moles* and likewise support the DMV's decision to suspend Turner's driving privileges.

Finally, Turner argues the Arizona plea agreement and judgment are inadmissible because they are not certified copies and the trial court did not judicially notice them. Turner did not raise these evidentiary objections to the Arizona records in the trial court or his opening brief and therefore forfeited them. (*Cold Creek Compost, Inc. v. State Farm Fire & Casualty Co.* (2007) 156 Cal.App.4th 1469, 1486 ["Arguments cannot properly be raised for the first time in an appellant's reply brief, and accordingly we deem them waived in this instance"]; *Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 351 [argument raised for the first time in the litigation in appellant's reply brief is "doubly waived"].) Moreover, Turner's argument seeks to impose an evidentiary standard on the DMV that does not apply in the administrative context in which the DMV suspended his driving privileges. As explained in *Isaac*, the evidentiary rules applicable in civil and criminal proceedings do not apply in DMV administrative proceedings to suspend a person's driving privileges. (*Isaac*, *supra*, 155 Cal.App.4th at pp. 862-863.) The records on which the DMV relies need only be properly part of the record of conviction (*ibid.*) and Turner does not dispute that the plea agreement and judgment are part of his record of conviction. Similarly, he does not challenge the accuracy of those records.

Because we find the foregoing documents sufficient to establish Turner was convicted in Arizona based on conduct that would violate section 23152, we do not address the DMV's contention that the traffic citation or other documents included in the administrative record provide further support for suspending Turner's license.

### III

#### DISPOSITION

The judgment is affirmed.  The DMV shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.