[No. C027768. Third Dist. Feb. 18, 1999.]

NOEL LOUIS DRAEGER, Plaintiff and Appellant, v.
SALLY REED, as Director, etc., Defendant and Appellant.

## Counsel

Susan Kay McGuire for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Martin H. Milas, Assistant Attorney General, Marybelle D. Archibald and Karin L. Polli, Deputy Attorneys General, for Defendant and Appellant.

## Opinion

**CALLAHAN, J.**—The Department of Motor Vehicles (DMV) suspended Noel Louis Draeger's driver's license in September 1996 pursuant to Vehicle Code section 13352, subdivision (a)(3) following two drunk driving convictions, one in California, and one in Florida.[1] Draeger argued the Florida statute was not comparable to section 23152, California's drunk driving statute. He filed a petition for writ of mandate against Sally Reed,

---

[1] All undesignated statutory references are to the Vehicle Code.

Director of DMV, after DMV failed to correct his driving record or grant him an administrative hearing.

The trial court granted the writ and ordered Reed to: (1) eliminate the Florida drunk driving conviction from Draeger's DMV record; and (2) set aside the order suspending his driver's license. It later denied Draeger's request for attorney fees under Code of Civil Procedure section 1021.5. Both parties appeal. We affirm the judgment.

I

*The Statutory Scheme*

California participates in the Driver License Compact with 37 other states and the District of Columbia. (§ 15000 et seq.; see Historical and Statutory Notes, 66 West's Ann. Veh. Code (1999 pocket supp.), § 14911, pp. 278-279 (hereafter Compact).) Before widespread adoption of the Compact, less formal arrangements for sharing information on license suspension and revocation were "limited significantly by differences in authorizing statutes and administrative policy." (Council of State Governments, The Driver License Compact and The Vehicle Equipment Safety Compact (1962) p. 3.) By contrast, "[t]he [Compact] sets up stable, uniform interstate procedures to correct the situation. . . . Basically, the Compact provides that a driver's entire record—including out-of-state convictions—will be known to his home state. For the four specific offenses—(1) manslaughter or negligent homicide; (2) driving while under the influence of liquor or drugs; (3) a felony in which a motor vehicle is used; and (4) hit-run driving which results in injury or death—the compact provides that the conduct leading to an out-of-state conviction will be treated as if the conduct had occurred in the driver's home state." (*Id.* at pp. 3-4.)

Accordingly, under section 15022, "[t]he licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code, or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the conviction was a result of the forfeiture of bail, bond or other security; and shall include any special findings made in connection therewith." For purposes of suspending, revoking, or limiting the license to operate a motor vehicle, the licensing authority of the home state "shall give the same effect to the conduct reported, pursuant to Section 15022 of this compact, as it would if such

conduct had occurred in the home state, in the case of a conviction for: [¶] . . . [¶] (2) Driving a motor vehicle while under the influence of intoxicating liquor . . . ." (§ 15023, subd. (a).)

Under section 13352, subdivision (a), the DMV "shall immediately suspend or revoke, or record the court-administered suspension or revocation of, the privilege of any person to operate a motor vehicle upon receipt of a *duly certified abstract of the record of any court* showing that the person has been convicted of a violation of Section 23152 . . . ." (Italics added.) It must suspend the license for eighteen months if the driver is convicted of two violations of section 23152 within a seven-year period. (§§ 13352, subd. (a)(3), 23165.) Under section 13352, subdivision (d), and consistent with the Driver License Compact, "[a] conviction of an offense in any state, . . . which, if committed in this state, would be a violation of Section 23152, is a conviction of Section 23152 for purposes of this section, . . . The department shall suspend or revoke the privilege to operate a motor vehicle pursuant to this section upon receiving notice of that conviction."

Section 13363 provides additional direction concerning out-of-state convictions. Subdivision (a) states that DMV "may, in its discretion, . . . suspend or revoke the privilege of any resident or nonresident to drive a motor vehicle in this State upon receiving notice of the conviction of the person in a state, . . . of the United States, . . . of an offense therein which, if committed in this State, would be grounds for the suspension or revocation of the privilege to operate a motor vehicle." *Moomjian* v. *Zolin* (1993) 12 Cal.App.4th 1606, 1613-1614 [16 Cal.Rptr.2d 335], holds the specific, mandatory provisions of section 13352, subdivision (a)(3) control over the discretionary provisions of section 13363, subdivision (a). Subdivision (b) of section 13363 states that DMV "shall not give effect to [a report of an out-of-state conviction] pursuant to . . . Section 15023 unless the department is satisfied that the law of such other place pertaining to the conviction is substantially the same as the law of this State pertaining to such conviction and that the description of the violation from which the conviction arose, is sufficient and that the interpretation and enforcement of such law are substantially the same in such other place as they are in this State." *Moomjian* does not expressly limit the application of the mandatory provisions of section 13363, subdivision (b).

Section 23152, California's drunk driving statute, reads, in relevant part: "(a) It is unlawful for any person who is under the influence of any alcoholic beverage . . . to *drive a vehicle*. [¶] (b) It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." (Italics added.)

Draeger's out-of-state conviction involved violation of Florida Statutes, title XXIII, Motor Vehicles, former section 316.193 (hereafter Florida former section 316.193), which provided, in part: "(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is *driving or in actual physical control of a vehicle* within this state and: [¶] (a) The person is under the influence of alcoholic beverages, . . . when affected to the extent that the person's normal faculties are impaired; or [¶] (b) The person has a blood or breath alcohol level of 0.08 percent or higher." (Italics added.)

II

*Factual and Procedural Background*

Grass Valley police arrested Draeger for drunk driving in June 1996. A misdemeanor complaint charged him with violation of section 23152, subdivisions (a) and (b), and one prior conviction in the State of Florida. The Nevada County District Attorney's Office provided Draeger's attorney with documents relating to the 1990 Florida conviction. The packet included a certified copy of the docket showing Draeger pleaded nolo contendere to a charge of "D.W.I." It also included a transcript of Draeger's Florida driving record which recorded a conviction for "driving under the influence." There is nothing in the record to suggest these documents had been in DMV's possession or otherwise formed a basis for DMV's subsequent suspension of Draeger's driving privilege.

The Nevada County District Attorney's Office concluded the conviction under Florida former section 316.193 did not qualify as a conviction in California. The court dismissed the prior on the People's motion. Draeger pleaded no contest to a first offense violation of section 23152, subdivision (a).

Two weeks later, the DMV notified Draeger it had suspended his driver's license for 18 months based on the California and Florida convictions. When Draeger's efforts to correct his DMV record proved unsuccessful, he filed a petition for alternative writ of mandate.

The court issued the alternative writ. In her response, Reed provided copies of the traffic citation and police report which formed the basis of the charge he violated Florida former section 316.193. The citation indicated Draeger was stopped after the officer observed his vehicle running a stop sign and crossing the center line. Tests revealed Draeger had a blood-alcohol level of .16. Although Reed's response cited the certified copy of the docket

provided by the district attorney and attached to Draeger's petition, there is no evidence it provided a basis for Draeger's suspension.

The court ultimately ruled in Draeger's favor on the question whether the Florida conviction qualified as a prior. It reasoned that "[a]lthough no authority was cited one way or the other, . . . one looks to the conduct prohibited in the statutes and not the facts underlying the conviction to determine if the offenses are equivalent. Thus, if the out-of-state statute is broader than the California statute, it is not equivalent even if the out-of-state driver was convicted of the same conduct prohibited in California. [¶] Driving a vehicle and being in actual control of a vehicle are not synonymous. *Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753 [280 Cal.Rptr. 745, 809 P.2d 404]. Therefore, since [Draeger] could not have been convicted of that offense in California, his Florida conviction cannot be used as a prior offense in California." The court denied Draeger's request for attorney fees. These appeals ensued.

### III

### *DMV's Appeal*

#### A. *Comparison of the California and Florida Statutes:*

██ The pivotal question in this appeal is *what* DMV is required to compare to determine whether Draeger's Florida conviction would be a drunk driving conviction under section 23152. Does California, the home state of the licensee, look to the facts underlying the conviction in Florida, a reporting party state; or does California simply match the elements of its own cognate offense with those of Florida's cognate offense to see if they are congruent?

Reed challenges the trial court's reliance on the conduct prohibited by the Florida drunk driving statute rather than the facts underlying Draeger's conviction. She does not question the court's finding that the Florida statute is broader than section 23152.

#### 1. *Standard of Review:*

██ Where, as here, the facts are undisputed, we independently review the trial court's construction of the relevant statutes. (*Moomjian* v. *Zolin, supra,* 12 Cal.App.4th at p. 1612.) ██ The objective of statutory construction is to ascertain and effectuate legislative intent. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) Our

effort is guided by familiar rules of construction. "First, a court should examine the actual language of the statute. . . . [¶] In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning . . . unless, of course, the statute itself specifically defines those words to give them a special meaning . . . . [¶] If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. . . . [¶] But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history. . . . [¶] The final step—and one which . . . should only be taken when the first two steps have failed to reveal clear meaning—is to apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable . . . in accord with common sense and justice, and to avoid an absurd result . . . ." (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238-1239 [8 Cal.Rptr.2d 298], citations omitted.)

■ If the trial court's decision is right, we will affirm the judgment regardless of the correctness of the grounds upon which the court reached that decision. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 340, p. 382.) "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

2. *The Proper Test:*

■ The Compact is ambiguous as to which test the Legislature intended California to apply to determine whether an out-of-state drunk driving conviction would be a drunk driving conviction under section 23152. Although a congruency of elements or conduct test is easy to apply, its strict application would likely negate the application of the Compact not only to Florida convictions but also to convictions in an unknown number of other states whose drunk driving statutes are idiosyncratic.

On the other hand, there are practical problems with the alternative test advocated by Reed, that is, consideration of the facts underlying the conviction. In most states, driving under the influence (DUI) is a misdemeanor tried in an inferior court of limited jurisdiction. Where a prior felony conviction is involved, the prosecutor may use defendant's conduct as revealed by the record of the judgment of conviction to establish it is the

equivalent to a serious or violent felony under Penal Code sections 667 and 1192.7. As this case demonstrates, records of misdemeanor convictions are usually sparse, particularly where the defendant pleads guilty. The Legislature cannot have intended that California use police reports to determine the substance of foreign DUI convictions. In the criminal context, no case holds that police reports are part of "the record of conviction" for purposes of proving prior serious felony convictions under Penal Code section 667, subdivision (a). (See *People* v. *Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184].) The thrust of the legislative concern under section 13352 is the "protection of the public from drivers whose prior conduct demonstrates they cannot currently be trusted with a license to drive." (*Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 380-381 [211 Cal.Rptr. 748, 696 P.2d 141]; *Baldwin* v. *Department of Motor Vehicles* (1995) 35 Cal.App.4th 1630, 1640 [42 Cal.Rptr.2d 422].) This legislative policy would be ill served by a statutory construction which hampered speedy DMV action.

Section 13363 provides assistance in resolving the ambiguity facing us. The Legislature first enacted section 13363 in 1959. (Stats. 1959, ch. 3, p. 1627.) It amended that section in 1963 as part of legislation that adopted the Compact. (Stats. 1963, ch. 237, § 9, p. 980.) The amendment added subdivision (b), and made conforming changes to subdivision (a). (See Historical Note, 66 West's Ann. Veh. Code (1987 ed.) § 13363, p. 357.)

As we explained, section 13363, subdivision (b) prescribes how California, as a home state under the Compact, will construe reports of section 15023, subdivision (a) offenses from other states. It provides that California will not give effect to such reports unless DMV is satisfied that: (1) the law of the reporting state pertaining to conviction is "substantially the same" as California law pertaining to the conviction; (2) the description of the violation from which the conviction arose is sufficient; and (3) the interpretation and enforcement of the law of the reporting state are "substantially the same" as the interpretation and enforcement of the California law in question.

Section 23152 and Florida former section 316.193 are essentially identical insofar as they relate to a person who "is driving" or "drive[s]" a vehicle under the influence. Both states interpret their respective drunk driving statutes by focusing on the prohibited *conduct*. Under California law, "[i]n everyday usage the phrase, 'to drive a vehicle,' is understood as requiring evidence of volitional movement of a vehicle." (*Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].) In Florida, a critical element of the corpus delicti of driving while

intoxicated is evidence that the defendant was *driving* at the time the offense was committed. (*State* v. *Hepburn* (Fla.Dist.Ct.App. 1984) 460 So.2d 422, 426.) The focus on the proscribed conduct is consistent with the intent of the drafters of the Compact. "The core of [the Compact] is the concept of 'conduct' as the effective trigger of action by the home state." (Council of State Governments, The Driver License Compact and The Vehicle Equipment Safety Compact, *supra*, at p. 10.) *Driving* under the influence is one of the four offenses related to the operation of a motor vehicle covered by the reciprocal provisions of the Compact. (§ 15023, subd. (a)(2).)

The Florida statute also covers a person who is "in actual physical control of a vehicle . . . and [¶] . . . is under the influence of alcoholic beverages, . . . or [¶] . . . has a blood or breath alcohol level of 0.08 percent or higher." (Fla. former § 316.193, subd. (1)(a) & (b).) In California, such conduct is generally prosecuted as public drunkenness under Penal Code section 647, subdivision (f). (See *Mercer* v. *Department of Motor Vehicles*, *supra*, 53 Cal.3d at pp. 757, 762-763; *People* v. *Lively* (1992) 10 Cal.App.4th 1364, 1368-1370 [13 Cal.Rptr.2d 368].) The Compact is not concerned with these alcohol-related offenses.

Contrary to the reasoning of the trial court, we conclude section 23152 is substantially the same in language, interpretation and enforcement as to the first prong of former section 316.193 of the Florida statute, that is, the part which prohibits "*driving* . . . under the influence of alcoholic beverages." (Italics added.) Moreover, we find no impediment to applying the Compact to the "driving" portion of Florida former section 316.193 where the description of the violation from which the conviction arose clearly shows the conviction was based on drunk *driving*, as opposed to "actual physical control" of a vehicle while under the influence of alcohol. Our interpretation makes the statutory language workable and reasonable, accords with common sense and justice, and avoids the absurd result of California having to ignore all Florida drunk driving convictions. (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc., supra,* 6 Cal.App.4th at p. 1239.) In cases involving out-of-state convictions under statutes similar to Florida's, the DMV may find it necessary in the future to request additional information from the reporting state to confirm the conviction involved *driving*. We do not view this as an unreasonable burden in California's implementation of the Compact. Counsel for Reed acknowledged at the hearing on Draeger's petition that "on this particular issue there aren't a lot of cases. Not a lot of people get DUI convictions out of state."

The problem in the case before us is that Reed failed to provide sufficient admissible evidence that Draeger was convicted of drunk *driving* in Florida.

DMV action to revoke or suspend the driving privilege is triggered by its receipt of "a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 . . . ." (§ 13352, subd. (a); see *Pollack* v. *Department of Motor Vehicles, supra,* 38 Cal.3d at p. 381 [DMV action based on record of convictions]; *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335, 338 [90 Cal.Rptr. 586, 475 P.2d 858] [DMV action based on abstracts of judgments].) The plain language of section 13352, subdivision (a) applies to both in-state and out-of-state convictions. (§ 13352, subd. (d).) The Compact requires that the report of a party state "describe the violation specifying the section of the statute, code, or ordinance violated; . . ." (§ 15022.)

Reed offered two documents in response to the alternative writ: the police report and the traffic citation. Absent evidence to the contrary, we assume these documents formed the basis for the DMV action to suspend Draeger's driver's license. The police report is not an abstract of judgment; nor does it ordinarily form part of the record of conviction. The drafters of the Compact cautioned that "[a]ny attempt to give legal effect to unadjudicated information contained in documents such as officers' reports might raise due process issues of a constitutional nature." (Council of State Governments, The Driver License Compact and The Vehicle Equipment Safety Compact, *supra,* p. 10.) Accordingly, we conclude the DMV should not have considered the police report in its decision to suspend Draeger's license. Although the traffic citation, as the charging document, is properly included in the record of conviction, we conclude it is insufficient, standing alone, to establish Draeger was *convicted* of drunk driving in Florida.

The missing piece of the puzzle—the certified copy of the docket—was in the hands of the Nevada County District Attorney. However, we are compelled to affirm the judgment in Draeger's favor based on the record before us. We leave it to Reed to determine whether DMV can or should pursue suspension of Draeger's driving privilege under section 13352 based on a more complete record of conviction.

B. *Right to an Administrative Hearing:*

 Reed also disputes the trial court's finding that DMV wrongfully refused to conduct an administrative hearing on the question "whether the out-of-state offense would be a violation of *section 23152* in this state." (Italics added.) Having concluded there were separate grounds to support the court's issuance of the writ, we address only briefly the question of Draeger's right to a hearing.

Under section 14101, subdivision (a), a driver is not entitled to a hearing if the DMV.'s action "is made mandatory by this code." " 'The only precedent event required as the basis for action by the department is receipt by it of *"a record"* of conviction.' " (*Houlihan* v. *Department of Motor Vehicles* (1970) 3 Cal.App.3d 915, 919 [83 Cal.Rptr. 885], italics in original.) On the other hand, "[i]f the DMV's records are inaccurate or if there is a mistake as to identity, license suspension is not mandatory by the provisions of the code. Under the terms of section 14101, therefore, a driver who contests the accuracy of DMV records of prior convictions may not be denied the opportunity for an administrative hearing to demonstrate that suspension is not mandatory in his case." (*Pollack* v. *Department of Motor Vehicles, supra,* 38 Cal.3d at p. 380, fn. 8.)

Although Draeger submitted at least two timely requests that DMV correct his driving record, the requests were not based on a claim DMV had received or recorded an inaccurate abstract of his Florida drunk driving conviction. Instead, he argued the Florida conviction would not be a violation of section 23152 if committed in California.

Section 13363, subdivision (b) states that DMV shall not give effect to a report of an out-of-state drunk driving conviction unless it is satisfied that "the law of such other place pertaining to the conviction is substantially the same as the law of this State pertaining to such conviction . . . ." However, the Legislature provided no procedure for drivers to challenge DMV's analysis of this question *before* their driving privilege is suspended or revoked. Where, as here, public safety is at issue, due process does not require that it do so. (*Dixon* v. *Love* (1977) 431 U.S. 105, 115 [97 S.Ct. 1723, 1729, 52 L.Ed.2d 172, 181-182].) Thus, DMV correctly informed Draeger he was not entitled to a hearing unless he sued.

IV

*Draeger's Appeal*

Draeger's appeal is limited to the question whether the trial court abused its discretion in denying "without explanation" his request for attorney fees under the "private attorney general" theory set forth in Code of Civil Procedure section 1021.5. Code of Civil Procedure section 1021.5 reads, in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has

been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, . . ."

Draeger initially requested attorney fees under Code of Civil Procedure section 1095 and Government Code section 800. The parties later submitted written argument for and against an award of attorney fees under the private attorney general theory. The court denied attorney fees on all grounds argued by Draeger. It specifically ruled this was not "an appropriate case for an award of attorney fees under Code of Civil Procedure section 1021.5."

■ The private attorney general theory rests upon a recognition that privately initiated lawsuits are often essential to effect fundamental public policies embodied in constitutional or statutory provisions. "[W]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) However, the Supreme Court has made clear that "[t]he determination that the public policy vindicated is one of constitutional stature will not . . . be in itself sufficient to support an award of fees on the theory here considered. Such a determination simply establishes the first of the three elements requisite to the award (i.e., the relative societal importance of the public policy vindicated). . . . Only if it is also shown (2) that the necessity for private enforcement in the circumstances has placed upon the plaintiff a burden out of proportion to his individual stake in the matter, and (3) that the benefits flowing from such enforcement are to be widely enjoyed among the state's citizens—only then will an award on the 'private attorney general' theory be justified." (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 46, fn. 18 [141 Cal.Rptr. 315, 569 P.2d 1303].)

■ " ' "Whether a party has met the requirements [of Code of Civil Procedure section 1021.5] for an award of fees and the reasonable amount of such an award are questions best decided by the trial court in the first instance. [Citations.] That court, utilizing its traditional equitable discretion, must realistically assess the litigation and determine from a practical perspective whether the statutory criteria have been met. [Citation.] Its decision will be reversed only if there has been a prejudicial abuse of discretion. [Citation.] To make such a determination we must review the entire record,

paying particular attention to the trial court's stated reasons in denying or awarding fees and whether it applied the proper standards of law in reaching its decision." [Citation.]' " (*Hewlett* v. *Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 544 [63 Cal.Rptr.2d 118], quoting *Crawford* v. *Board of Education* (1988) 200 Cal.App.3d 1397, 1405-1406 [246 Cal.Rptr. 806].) We conclude there was no abuse of discretion in the case before us.

Contrary to Draeger's characterization, the court did, in fact, state a reason for rejecting his request for attorney fees under Code of Civil Procedure section 1021.5. After reviewing the parties' points and authorities, it ruled this was not an appropriate case for such an award. In other words, Draeger failed to satisfy the statutory requirements. The record supports the court's ruling.

The record supports a conclusion Draeger's legal action did not confer "a significant benefit, whether pecuniary or nonpecuniary, . . . on the general public or a large class of persons." (Code Civ. Proc., § 1021.5.) The court recognized that public safety was the overriding legislative concern when it stated in its ruling: "The [DMV] is charged with the duty to implement the public policy of this State as that policy relates to the driving privileges of persons convicted of driving under the influence. This is an important and essential process in an attempt to mitigate or eliminate the carnage that results from persons driving under the influence. [¶] . . . [T]he intent of the statutes [is] clear. The more driving under the influence convictions one suffers, whether within or without this State, the more severe will be the driving privilege sanctions." Although Draeger's legal efforts resulted in a clarification of the law relating to out-of-state drunk driving convictions, the "benefit" did not affect the general public or a large class of persons. Instead, it affected a relatively small class of persons with multiple drunk driving convictions in California and other states. The court would have been justified in deciding that drunk drivers' avoidance of increased sanctions was not the type of public benefit the Legislature intended to compensate under Code of Civil Procedure section 1021.5.

The trial court was also entitled to conclude the financial burden on Draeger was not out of proportion to his stake in avoiding the 18-month driver's license suspension under section 13352, subdivision (a)(3). Draeger had the burden of showing that his litigation costs transcended his personal interest in the matter. (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 113 [212 Cal.Rptr. 485].) However, his request for attorney fees under the private attorney general theory contains nothing more than an awkward restatement of the second statutory requirement: "due to

the cost to the petitioner of enforcing the provisions of the Vehicle Code sections involved versus the benefit conferred upon himself as compared to that conferred upon other persons who may be similarly situated, petitioner submits that the criteria of subparagraph (b) of section 1021.5 [are] met in this case."

## DISPOSITION

The judgment is affirmed. Each party shall bear his or her own costs.

Morrison, Acting P. J., and Puglia, J.,* concurred.

The petition of defendant and appellant for review by the Supreme Court was denied May 26, 1999.

---

*Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.