Filed 12/19/19 Cerified for Publication 1/10/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JUAN ANTONIO VILLARREAL, JR., | B291027 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS157864) |
| v. | |
| STEVE GORDON, as Director, etc., | |
| Defendant and Respondent. | |

     APPEAL from an order of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

     Law Offices of Chad R. Maddox and Chad R. Maddox for Plaintiff and Appellant.

     Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gabrielle H. Brumbach and Jaclyn Dyan Grossman, Deputy Attorneys General, for Defendant and Respondent.

After prevailing in the trial court on a petition for writ of mandate, Juan Antonio Villarreal, Jr., filed a motion for attorney fees under the private attorney general doctrine. (Code Civ. Proc., § 1021.5.)[1] The trial court concluded that Villarreal had not established that the benefit the writ petition achieved was conferred on a sufficiently large enough class of persons to justify an attorney fee award under section 1021.5. We agree and affirm the trial court's order.

## BACKGROUND

### A. The Driver License Compact and Drunk Driving

California participates in the Driver License Compact (Compact), which requires the "licensing authority of a party state [to] report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code, or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the conviction was a result of the forfeiture of bail, bond or other security; and shall include any special findings made in connection therewith."[2] (Veh. Code, § 15022.) "The licensing authority in the home state, for the purposes of suspending, revoking, or limiting the license to operate a motor

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] California, 40 other states (including, as pertinent to this appeal, Arizona), and the District of Columbia are parties to the Compact. (Veh. Code, § 15000 et seq.; Historical and Statutory Notes, 66A West's Ann. Veh. Code (2019 pocket supp.) ch. 6, pp. 9-10.)

2

vehicle, shall give the same effect to the conduct reported [under the Compact] as it would if such conduct had occurred in the home state, in the case of a conviction for: [¶] . . . [¶] (2) Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle." (Veh. Code, § 15023, subd. (a)(2).)

Under Vehicle Code section 13352, subdivision (a), the DMV "shall immediately suspend or revoke the privilege of a person to operate a motor vehicle upon the receipt of an abstract of the record of a court showing that the person has been convicted of a violation of [Vehicle Code] Section 23152 . . . . The commercial driving privilege shall be disqualified as specified in [Vehicle Code] Sections 15300 to 15302, inclusive." Vehicle Code section 23152 provides, among other things, that it "is unlawful for a person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." (Veh. Code, § 23152, subd. (b).) "[U]pon a conviction or finding of a [second] violation of [Vehicle Code] Section 23152" within 10 years, the DMV must suspend the driver's license for two years. (Veh. Code, § 13352, subd. (a)(3).)

For a conviction or finding from another state to be given effect in California (for example, to form the basis of a DMV license suspension), the DMV must be "satisfied that the law of such other place pertaining to the conviction is substantially the same as the law of this State pertaining to such conviction and that the description of the violation from which the conviction arose[ ] is sufficient and that the interpretation and enforcement of such law are substantially the same in such other place as they are in this State." (Veh. Code, § 13363, subd. (b).) The trial court

3

referred to convictions that meet the criteria in Vehicle Code section 13363, subdivision (b) as "qualifying," and those that do not as "non-qualifying."

## B. Villarreal's Drunk Driving Conviction & License Suspensions

On November 26, 2013, Villarreal was arrested for driving under the influence. He pleaded guilty on April 9, 2014 to a violation of Vehicle Code section 23152, subdivision (b). On April 12, 2014, the DMV disqualified Villarreal's commercial driver license. The DMV ended the disqualification on April 11, 2015.

On August 11, 2015, the DMV issued an order suspending Villarreal's license for two years effective April 9, 2014. According to the trial court, "[t]he August 11, 2015 [DMV] Order of Suspension indicated that it was based on [Villarreal's] April 9, 2014 California conviction and also on an alleged 'DUI-DRUG' conviction in the State of Arizona in 2005."

On September 17, 2015, the DMV informed Villarreal that the court records regarding Villarreal's Arizona conviction for driving under the influence (DUI) had been purged and that the Arizona conviction had accordingly been removed from his driving record. The DMV amended Villarreal's two-year suspension into a "six month first offense DUI."

In March 2016, Villarreal renewed his driver license. "[A]s part of the renewal, Arizona reported the 2005 DUI conviction again, which triggered another two-year suspension." According to the DMV, "when the DMV receives notice of out-of-state DUI conviction, the DMV database automatically generates a notice of suspension if the out-of-state conviction occurred within 10 years of a California DUI conviction." At Villarreal's request, the DMV set aside the second two-year suspension. DMV explained:

4

"When we purged the Arizona DUI and the suspension order last September, we did not anticipate that a renewal application would result in the conviction being re-reported and another suspension action being generated. We can remove the Arizona DUI conviction and this recent two year suspension again; however, this same issue could arise when Mr. Villarreal renews his license in 2020. We cannot prevent other states from reporting their DUI convictions to California, which automatically update the DMV database and triggers the mandatory actions. The other option would be to leave the 2005 Arizona conviction and the two year suspension which has been set aside on [Villarreal's] driving record, which would prevent Arizona from reporting the same offense in the future."

**C. The Petition for Writ of Mandate**

Villarreal filed his original petition for writ of mandate on September 14, 2015. The DMV demurred, and the trial court sustained the demurrers with leave to amend on March 24, 2016. Villarreal filed a first amended petition—the operative petition in these proceedings—on April 13, 2016. The trial court overruled demurrers to the first amended petition on September 15, 2016.

The trial court heard the petition on October 24, 2017. After the hearing, the trial court granted Villarreal's petition and on February 20, 2018 issued a writ commanding the DMV to do the following:

"As to [Villarreal]:

"1.     Not give effect to [Villarreal's] June 14, 2005 State of Arizona conviction, including, but not limited to:

"a.     Imposing any revocation, suspension, restriction, or disqualification of [Villarreal's] driver license based in whole, or in part, on said conviction.

5

"b.    "Recording, even temporarily, [Villarreal's] June 14, 2005 State of Arizona conviction onto [Villarreal's] driving record.

"As to all California drivers:

"2.    Not give effect to any conviction, as defined in subdivision (c) of section 15021 of the Vehicle Code, for driving under the influence which is reported to the [DMV] by another state, territory or possession of the United States, the District of Columbia, or the Commonwealth of Puerto Rico until you are satisfied that the conditions set forth in Vehicle Code section 15023 and section 13363 have been met.

"a.    Giving effect to a conviction includes imposing any revocation, suspension, restriction, or disqualification of any California driver license;

"b.    You may not deem yourself satisfied that the conditions set forth in Vehicle Code section 15023 and section 13363 have been met, unless the [DMV] is satisfied that the description of the violation from which the conviction arose in the reporting state, territory or possession of the United States, the District of Columbia, or the Commonwealth of Puerto Rico is sufficient to show the conviction arose from conduct involving *actual* driving; and

"c.    You may not deem yourself satisfied that the conditions set forth in Vehicle Code section 15023 and section 13363 have been met solely because a conviction was reported to California pursuant to the provisions of the [Compact].

"3.    Not give effect to any conviction reported to California once you are satisfied that the conditions set forth in Vehicle Code section 15023 and section 13363 have not been met."  (Original italics.)

**D. The Motion for Attorney Fees**

On March 5, 2018, Villarreal filed a motion for $240,459.72 in attorney fees under section 1021.5.[3]  The trial court denied Villarreal's motion in a written ruling issued May 1, 2018. Pertinent to this appeal, the trial court wrote:  "Based on the evidence before the court, the court cannot conclude that the number of California drivers with non-qualifying out-of-state convictions that will benefit from the court's writ is meaningful and sufficiently large to justify fees under section 1021.5."[4]

Villarreal filed a timely notice of appeal from the trial court's order denying attorney fees.

## DISCUSSION

"The Legislature adopted section 1021.5 as a codification of the private attorney general doctrine of attorney fees developed in prior judicial decisions."  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1288.)  Section 1021.5 provides:  "Upon motion, a court may award attorneys' fees to a successful party against one or more

---

[3] Villarreal alternatively sought an award of $7,500 in attorney fees under Government Code section 800.  Although the trial court denied Villarreal's motion in its entirety, this appeal is based only on the trial court's denial of fees under section 1021.5.

[4] The trial court's order appears to make no determination whether Villarreal's "expected legal costs transcended his personal financial stake in this action."  While the trial court analyzed the question, it concluded the analysis by stating: "*While not entirely clear, even if the evidence is sufficient to show* that [Villarreal's] expected legal costs transcended his personal financial stake in this action, [Villarreal] has not shown the action conferred a significant benefit on the general public or a large class of persons.  [Villarreal] is not entitled to attorneys' fees under [section] 1021.5."  (Italics added.)

7

opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

## A. Standard of Review

"To the extent we construe and define the statutory requirements for an award of attorney's fees, our review is de novo; to the extent we assess whether those requirements were properly applied, our review is for an abuse of discretion." (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1156; accord, *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

## B. Significant Benefit to General Public or Large Class

Villarreal contends the trial court misconstrued section 1021.5 to require that the "significant benefit . . . conferred on the general public or a large class of persons" be a *direct* benefit. Villarreal bases this contention on the trial court's statement that it could "not conclude that the number of California drivers with non-qualifying out-of-state convictions that will benefit from the court's writ is meaningful and sufficiently large to justify fees under section 1021.5." Villarreal argues that the trial court's writ indirectly benefits every California driver—26,484,646 people as of December 31, 2016—by protecting against the wrongful suspensions of their driver licenses. That indirect benefit, Villarreal contends, is sufficient to justify an attorney fee

8

award under section 1021.5. Even if the trial court correctly construed section 1021.5, Villarreal argues, the trial court abused its discretion when it denied Villarreal's motion for attorney fees.

In *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 939-940, the Supreme Court explained the trial court's responsibility when analyzing the "significant benefit" element of section 1021.5. "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified," the Court said. (*Woodland Hills,* at p. 939.) "Both the statutory language ('*significant* benefit') and prior case law, however, indicate that *the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation.* We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving benefit, *from a realistic assessment,* in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Id.* at pp. 939-940, italics added.)

The trial court spent several pages of its lengthy ruling examining in detail the parties' evidence and assertions. The trial court correctly noted that a "significant benefit may be pecuniary or non-pecuniary and need not be concrete;" that the trial court is to perform a "realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case;" that the trial court is not required to narrowly construe the significant benefit factor; that the extent of the public benefit need not be great to justify an attorney fee award;

9

that "fees may not be denied merely because the primary effect of the litigation was to benefit the individual rather than the public;" and that "the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified."

The trial court ultimately concluded, however, that in light of all the pertinent circumstances, the most significant benefits in this case inured to California drivers with non-qualifying out-of-state convictions. That assessment does not ignore or minimize the generalized benefit all California drivers (and citizens) derive from the trial court's writ. Performing a complete analysis that recognizes and gives appropriate credence and weight to both the writ's general and specific benefits in proper measure is *not* the same thing as requiring a direct benefit.

While there is always a public benefit "when illegal private or public conduct is rectified," the most significant benefit here inured specifically to individual drivers with non-qualifying out-of-state drunk driving convictions. That benefit and the extent to which that benefit balances *against* the public benefit from and interest in public safety in the form of California's participation in the Compact are both "pertinent circumstances" the trial court was required to consider. Villarreal has not, therefore, demonstrated that the trial court improperly construed section 1021.5.

Neither can we conclude on this record that the trial court abused its discretion when it denied Villarreal's motion. The question here is not novel. In *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1526, the court considered the same question. *Draeger* explained that the "overriding legislative concern"

10

behind the Compact was public safety. "Although Draeger's legal efforts resulted in a clarification of the law relating to out-of-state drunk driving convictions, the 'benefit' did not affect the general public or a large class of persons. Instead, it affected a relatively small class of persons with multiple drunk driving convictions in California and other states. The court would have been justified in deciding that drunk drivers' avoidance of increased sanctions was not the type of public benefit the Legislature intended to compensate under . . . section 1021.5." (*Ibid.*) The trial court here could have safely reached the same conclusion.[5]

---

[5] Villarreal also argues that the sheer number of California drivers with non-qualifying out-of-state drunk driving convictions is sufficient to require an attorney fee award under section 1021.5. He argued (based on 2015 data from Arizona) that approximately 140 people with drunk driving convictions from each of 45 states with statutes that *might* make those convictions non-qualifying move to California each year. From that, he concludes that there could be as many as 120,000 California drivers (or less than one-half of one percent of California drivers) with non-qualifying out-of-state convictions.

Both the DMV and the trial court explained that Villarreal's "calculations are incomplete and include questionable assumptions." We have also reviewed the evidence and cannot conclude that Villarreal has provided evidence from which a trial court could reasonably discern the actual number (or even a reasonable approximation) of people with non-qualifying out-of-state drunk driving convictions.

## DISPOSITION

The trial court's order is affirmed.  Respondent is entitled to costs on appeal.


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


WEINGART, J.*

---

*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/10/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JUAN ANTONIO VILLARREAL, JR., | B291027 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS157864) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| STEVE GORDON, as Director, etc., | |
| Defendant and Respondent. | |

THE COURT:

The opinion filed in the above-entitled matter on December 19, 2019, was not certified for publication in the Official Reports. Pursuant to California Rules of Court, rule 8.1105(c), this opinion is now ordered published in the Official Reports.

_____

ROTHSCHILD, P. J.        CHANEY, J.        WEINGART, J.*

_____

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.