Filed 2/28/22  P. v. Castro CA2/8
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B303372 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A375846) |
| v. | |
| CARLOS CASTRO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Drew E. Edwards, Judge.  Reversed and remanded.

Orrick, Herrington & Sutcliffe, James E. Thompson, Lauren M. Kessler, Adrienne Knecht Tierney and Sarah Kate Mullins for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

Thirty-seven years ago, appellant Carlos Castro was charged along with three other men in the robbery-murder of Arturo Hernandez-Guerrero. In 1983, he pled guilty to second degree murder. In 2019, he filed a petition to vacate that conviction pursuant to Penal Code[1] section 1170.95. The trial court found appellant made a prima facie case that he was entitled to relief, issued an order to show cause, and then, following a hearing which the court limited solely to argument by the prosecutor and defense counsel, denied the petition. The trial court found the "record of conviction" established appellant was a major participant in the robbery of the victim and knowingly engaged in criminal activities which he knew carried a great risk of death.

Defendant appeals from the trial court's order denying his petition, contending the People failed to offer any evidence at the hearing on the order to show cause. Alternatively, defendant contends 1) the trial court violated his due process rights by limiting the evidentiary hearing to oral argument; 2) if the trial court considered the documents submitted as part of the initial pleading process the trial court erred because key documents contained unreliable and inadmissible hearsay; and 3) even if all the evidence was properly admitted, it is insufficient to prove beyond a reasonable doubt that he was a major participant in the robbery who acted with reckless indifference to human life.

---

[1]     Further undesignated statutory references are to the Penal Code.

On April 22, 2021, we issued our opinion, by which we remanded this matter for a new hearing at which the trial court was directed to act as an independent fact-finder to determine whether the prosecutor has established beyond a reasonable doubt that, under current law, defendant was a major participant in the robbery who acted with reckless disregard for human life.

The People filed a petition for review requesting that the California Supreme Court grant review and defer briefing because this case raised an issue already pending before the Court, to wit, whether the court acts as an independent factfinder or reviews the record for substantial evidence to support the conviction. The Court granted the petition and, on December 22, 2021, it transferred this case to us with directions to vacate our decision and reconsider the cause in light of Senate Bill No. 775.

We now vacate our prior decision. However, upon reconsideration in light of Senate Bill No. 775, we again reverse and remand the matter for a new evidentiary hearing where the trial court is directed to act as an independent factfinder at an evidentiary hearing that also comports with Senate Bill No. 775's express guidelines on the admission of evidence at evidentiary hearings held pursuant to section 1190.75, subdivision (d)(3). Both parties have advised the court that they, too, agree that no change in result is mandated by Senate Bill No. 775.

## BACKGROUND

A.   Senate Bill No. 1437

The Legislature passed Senate Bill No. 1437 in 2018 to "amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with

3

the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 amended section 188 to require that a principal "shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 enacted Penal Code section 1170.95 to provide a mechanism by which defendants convicted under abrogated theories of liability may petition to have the court vacate their murder conviction and conduct a resentencing hearing, if necessary. This procedure includes an evidentiary hearing at which the prosecutor bears the burden of proving beyond a reasonable doubt that the defendant is guilty of murder under the law in effect as of January 1, 2019. (§ 1170.95, subd. (d).)

B.     Senate Bill No. 775

Senate Bill No. 775, which amended section 1170.95, was signed by the Government on October 5, 2021. (Sen. Bill No. 775 (2020–2021 Reg. Sess.).) Among other changes, Senate Bill No. 775 amends section 1170.95, subdivision (d)(3) to require the prosecution to prove beyond a reasonable doubt that the petitioner "is guilty of murder" under current law, and further provides that "[a]finding that there is substantial evidence to support a conviction for murder" is insufficient to meet this required showing. (Sen. Bill No. 775 (2020–2021 Reg. Sess.) § 2 [revised § 1170.95, subd. (d)(3)].) It also added new text governing the consideration of evidence at a section 1170.95, subdivision (d)(3) evidentiary hearing, as follows:

4

"The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (Sen. Bill No. 775 (2020–2021 Reg. Sess.) § 2 [revised § 1170.95, subd. (d)(3)].)

C.     The Record

The record in this case does not contain the complaint filed against defendant or a transcript of his plea.  As we discuss in more detail below, the trial court stated that it was deciding defendant's petition on the basis of the record of conviction.  It is not entirely clear what the trial court believed was included in the record of conviction as the trial court never named the specific evidence upon which it relied.  However, the trial court's memorandum of decision suggests it considered at least the preliminary hearing transcript and defendant's pre-plea probation report.  Accordingly, we set forth the facts as shown in those two documents.

Testimony at the preliminary hearing in this matter showed that the victim was shot and stabbed in the foyer of an apartment building on 9th Street in downtown Los Angeles.  Two witnesses living nearby heard gunshots and looked out their

windows to see either two or three men getting into a light colored sedan which was in front of the building with its engine running. The car drove away. One of the witnesses, Benadino Diaz, testified that one of the men was carrying a rifle and another man had something shiny in his hand. Diaz also testified that the car did not have a rear license plate.

Los Angeles Police Department Officer William Cymbalsky was on patrol with a partner in Hollywood when he noticed a brown four-door Chevette with no rear license plate. His partner pulled in the lane behind the car, and the officers noticed that the Chevette was lane straddling. Believing that the car might be stolen or its driver under the influence of alcohol, the officers activated their overhead lights. The Chevette sped away and the officers pursued. After the Chevette made a right turn, Officer Cymbalsky observed a rifle protruding from the left rear door, and someone in the car began firing the rifle at the officers.

As the pursuit continued, the rifle and a bandana, which appeared to contain objects, was thrown out of the car. At some point, the patrol car "t-boned" the Chevette. Co-defendant Frank Owen remained in the driver's seat and co-defendant Luis Gomez in the left rear passenger seat. The right front and right rear passengers exited the car and fled. The rear passenger co-defendant Robert Ramos was caught almost immediately. Appellant, who was identified by Officer Cymbalsky as the front seat passenger, was later located by a K-9 unit.

The bandana was retrieved and found to contain three knives. The rifle, a .22 with a sawed-off barrel, was also recovered. The victim's wallet was found on the front seat of the Chevette.

Further details of the events surrounding the crimes are contained in defendant's pre-plea probation report.[2] The probation officer summarized defendant's oral statement to her as follows: Defendant was in the Aliso Village neighborhood drinking with Ramos and Gomez when Owen came by in his car. "Gomez suggested that they go cruising to Hollywood. He does not know who got the gun and had it when they got in the car. He sat in the front with Owen. He and all the others have knives because it is 'dangerous' to be on the street. They drove looking for a store to buy beer when Gomez said 'Stop.' They saw a man walking. Gomez and Ramos got out of the car. Gomez had the gun, although he is not sure since he was wearing a trench coat. He did not know what they were going to do but then thought

[2] We quote this probation report with some reluctance. Although a probation report is an official record and presumed reliable, we note that there are some problematic aspects to the unauthenticated copy of the report offered by the prosecutor. On the page following page 8 of the report, in the middle of a sentence summarizing appellant's oral statement to the probation officer, the font of the report abruptly changes, and the lines of text in the new font are at a slight diagonal to the earlier text and are not lined up with the line numbers on the left-hand side of the page. Although the preceding pages are clearly numbered in the lower left hand side of the page, the page with the font change is not numbered, nor are the subsequent pages in the report (which are also in the new, changed font). The font-changing page ends with the non-sequitur: "His girl friend visits". At a minimum, this raises a question about whether this is a draft version of the report or a final copy. We leave this question to be resolved on remand if the People choose to offer the report again.

they would probably rob the man. Defendant 'wanted to see' and followed them. Ramos had the gun. Gomez had a knife and told victim to give him his money. Victim had gone in a hallway. Ramos opened the door and shot inside. Defendant heard the victim yell. Gomez came out 'real quick'. Owen came by in the car. Gomez had victim's wallet. Ramos had the gun. They all 'took off.' Defendant states that . . . he 'didn't do anything', he was 'messed up'[.]"

Considerably more documentation was presented to the court before it issued the order to show cause. In support of his petition, defendant submitted a declaration and accompanying letter from co-defendant Ramos in which Ramos stated he was the shooter, he left the car without announcing his attentions, and Castro reached him only after he had shot the victim. In its opposition, the People attached three documents which were part of the record of conviction: the preliminary hearing transcript, the autopsy report which was part of an exhibit offered at the preliminary hearing, and an undated but apparent pre-plea probation report for defendant. The People also attached five additional documents (Exhibits 4 through 8), all of which appear to be prepared by police personnel as part of their investigation of the crimes in this matter.[3] In reply, Castro submitted a declaration giving his own account of events on the night of the crime, properly authenticated pre-plea probation reports for

---

[3] The memorandum of points and authorities states that the exhibits "attached hereto" are "true and correct" copies of the documents. The record does not contain a declaration authenticating the documents. There is nothing to indicate Exhibits 4 through 8 were part of the court file in this matter.

co-defendants Ramos and Owen, and a transcript of the 2015 parole hearing for co-defendant Gomez.  Gomez testified at the parole hearing that he was the person who stabbed the victim.  Other aspects of Gomez's testimony were less helpful to defendant, as the People later highlighted at the subdivision (d)(3) hearing.

On August 14, 2019, after briefing on the initial petition was complete, the trial court issued an order to show cause why defendant's petition should not be granted, and indicated its intent to hold a hearing pursuant to section 1170.95, subdivision (d)(1).  The hearing was held on October 16, 2019.

The trial court began the hearing by asking the prosecutor if he would like to be heard.  When the prosecutor began making a factual argument about the events in this matter, defense counsel objected that "these facts are not in the record.  The documents—I believe most of the records that the District Attorney is relying on here, are impermissible hearsay.  They don't have any reliability.  This includes police reports and things like that."  The court replied: "Your objection is noted for the record.  I am going to deem this to be argument.  I have gone through the pleadings.  I will allow counsel to make his argument regarding the issue."  The prosecutor then cited *People v. Hall* (2019) 39 Cal.App.5th 831 in support of admissibility.  The court responded: "That is noted for the record.  I would imagine I will be looking at that case."  When it was defense counsel's turn to argue, he began by discussing the *Hall* case, contending that under *Hall* and evidentiary rules in general, the prosecutor's documents would not be admissible.

9

At the end of argument, the court simply stated that it would take the matter under submission and review the factual arguments and the cases cited by both counsel. Defense counsel stated: "One of the arguments I raised at the beginning is the evidentiary issues. Here we made an objection to the District Attorney's office relying on certain evidentiary issues. We also submitted declarations [and] a parole hearing transcript. I just wanted to know, since those things have not come into evidence, if I could put on the various witnesses live." The court replied: "Everything that counsel has submitted is part of the record for these purposes. That is all coming in. That is part of the things I will be considering in making my ruling."

On October 24, 2019, the trial court denied defendant's petition without ruling on any evidentiary issues. In the memorandum, the court referred to the "record of conviction" but not to any evidence proffered by appellant.[4]

In denying the petition the trial court wrote a memorandum of decision: "The record of conviction in this case establishes that: 1) all of the participants including the petitioner were involved in, and executed a plan to rob the victim in this case; 2) the victim in this case was stabbed with a knife and the petitioner was armed with a knife at the time of the crime at issue in this case; 3) the petitioner was aware of the fact

---

[4] It is not clear whether the trial court viewed the police documents as part of the record of conviction and so considered them in ruling on the petition. There is nothing in the record on appeal to suggest that these documents were used in any prior court proceedings or were ever seen by the court or defense counsel in the original proceedings in this matter.

10

that other participants in the crimes in this case were armed, including the fact that at least one other participant who was armed with a firearm; and 4) the petitioner fled the scene of the crime, and additionally fled the getaway vehicle after being approached by police officers.  Unlike the defendants in [*People v. Banks*] or [*People v. Clark*], the petitioner's conduct in this case demonstrated that he was not [simply] a planner or organizer of the robbery at issue in this case, who had no role in the immediate events leading up to the murder of the victim in this case.  To the contrary, the record of conviction in this case established that the petitioner was a major participant in the robbery of the victim in this case, and that he knowingly engaged in criminal activities which he knew carried a grave risk of death. [*People v. Estrada*] (1995) 11 Cal.4th 568."

## DISCUSSION

Appellant's claims of error, as a whole, arise from the trial court's decision not to treat the hearing held after the order to show cause issued as an evidentiary hearing.  Rather, the trial court limited the parties to arguing about the evidence proffered in their original briefing, completed before the trial court issued its OSC. Ultimately, the trial court expressly based its denial of the petition on the "record of conviction", indicating that it did not consider the evidence in the documents proffered by appellant in his pre-OSC briefing.

A.      *The People May Stand on the Record of Conviction*
We agree with appellant that the People were required to establish beyond a reasonable doubt at the post-OSC evidentiary hearing that appellant was a major participant in the robbery and acted with reckless indifference to human life.  We do not

11

agree that the People were *required* to introduce any evidence at all at the evidentiary hearing. Subdivision (d)(3) provides: "The prosecutor and the petitioner may *rely on* the record of conviction *or* offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3), italics added) Here, the prosecutor decided to rely on the record of conviction.[5]

To be clear, it is possible, if not likely, that mere reliance on the record of conviction will not be sufficient to establish beyond a reasonable doubt that the defendant was a major participant in the underlying felony who acted with reckless indifference to human life. That is an issue for a trial court to decide in light of all the evidence introduced at a post-OSC evidentiary hearing.

B.     *The Defense is Entitled to Offer New and Additional Evidence and to Challenge the People's Evidence*

We agree with appellant that he had a statutory right to offer new and/or additional evidence at the subdivision (d)(3) hearing, and to have the trial court consider that evidence. (§ 1170.95, subd. (d)(3).) As set out above, that is the mandate of Senate Bill No. 775's amendments to section1170.95, subdivision

---

[5]     The prosecutor clearly offered police investigative documents to support its original opposition to the petition, but did not argue they were part of the record of conviction. Police reports "[do not] ordinarily form part of the record of conviction." (*Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1523.) There is no reason to believe the trial court found the investigative reports in this case to be an exception to that rule. None of the facts which the court stated were established by the record of conviction are found in the investigative reports alone, and none of the facts found in the investigative reports alone are mentioned in the memorandum of decision.

(d)(3). We agree that a defendant is not limited to presenting only the (new and additional) evidence which has been presented in pre-OSC briefing, which is what appears to have happened here. Both parties are entitled to present live witness testimony, documentary evidence, and other evidence that comports with the rules set out in amended section 1170.95, subdivision (d)(3).

C. *The Trial Court Did Not Act as an Independent Factfinder at the Evidentiary Hearing*

The trial court offered no explanation for its decision to limit the parties to oral argument on the evidence submitted in their pre-OSC briefing, or its subsequent failure to rule on the hearsay objections which it took under submission, or its refusal to consider the new and additional evidence concerning which it entertained oral argument. The memorandum of decision indicates the court did not understand that it was required to act as an independent factfinder and determine whether the prosecution had established beyond a reasonable doubt that petitioner was guilty of murder under the law as of January 1, 2019.

At the time the trial court decided this matter, there were no published opinions addressing the analysis to be undertaken by a trial court in connection with a section 1170.95, subdivision (d)(3) evidentiary hearing. We now have the benefit of guidance from our Supreme Court and the Legislature on the duties of the trial court at and after a section 1170.95, subdivision (d)(3) hearing.

13

First, in *People v. Gentile* (2020) 10 Cal.5th 830, the California Supreme Court explained "section 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief." (*Id.* at p. 855.) This requires a trial court to hold a full and fair hearing with evidence presented and objections resolved, not the truncated hearing that occurred in this case.

Next, as set out above, Senate Bill No. 775 expressly requires the trial court to find the defendant guilty or not guilty based on the evidence presented at the subdivision (d)(3) hearing, without regard to what a jury may have previously determined or whether the verdict at the earlier trial is supported by substantial evidence.

The trial court never expressly explained its role in evaluating the petition following the subdivision (d)(3) hearing. In its memorandum of decision denying the petition, as set out above, the court simply summarized the facts it gleaned from the record of conviction and then concluded: "[T]he record of conviction in this case established that the petitioner was a major participant in the robbery of the victim in this case, and that he knowingly engaged in criminal activities which he knew carried a grave risk of death."

The trial court's statement is ambiguous, but suggests it did not act as an independent factfinder to determine whether the People had established beyond a reasonable doubt that defendant was a major participant in the robbery who acted with reckless disregard for human life. The trial court twice states that it is relying on the record of conviction, and twice uses the verb "establish" without the modifier "beyond a reasonable

14

doubt." The court does not appear to have looked beyond the record of conviction to consider any of the new or additional evidence offered by the defense as it would have done if it were ruling as an independent factfinder.[6] The court's narrow reference to the record of conviction suggests that the court adopted the prosecutor's argument that the petition should be denied if the prosecutor's evidence "could" result in a murder conviction under current law.

Because, as we have just explained, the trial court did not clearly act as an independent factfinder and did not afford appellant the opportunity to present new and/or additional evidence or to obtain rulings on its challenges to the evidence that was presented, we remand this matter to the court to conduct a new section 1170.95, subdivision (d)(3) hearing under the standards set forth in this opinion, including Senate Bill No. 775's guidance on the admission of evidence at the hearing. In light of this remand, we need not and do not reach any remaining claims on appeal.

---

[6] Without wading into issues which need not be decided on this appeal, we note that appellant submitted a declaration providing a substantially different account of the crimes than the account attributed to him in the probation report. Appellant was present in the courtroom and could have testified if the trial court found his declaration to be inadmissible hearsay. Thus, the trial court's failure to look beyond the record of conviction cannot be attributed to a lack of any evidence beyond that record.

## DISPOSITION

The trial court's order denying defendant's section 1170.95 petition is reversed and this matter is remanded for a new hearing pursuant to subdivision (d)(3).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

GRIMES, Acting P. J.

HARUTUNIAN, J.*

---

*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.